## Abraham S. Bearse *vs.* Max Lebowich & another.

Suffolk. March 18, 1912. — June 19, 1912.

Present: Rugg, C. J., Morton, Braley, Sheldon, & DeCourcy, JJ.

*Pledge. Equity Jurisdiction,* To compel marshalling of securities by creditor, To enforce rights of surety. *Surety. Contract,* Construction. *Evidence,* Extrinsic affecting writings. *Equity Pleading and Practice,* Memorandum, Bill, Decree.

From a memorandum of a judge who heard a suit in equity involving the question whether the relation between the plaintiff and a partnership was, as to a debt owed to the defendant, one of surety and principal, or one of joint principals, it appeared that a certain contract in writing had been made between the plaintiff and the defendant by which the plaintiff furnished to the defendant security for a debt owed to the defendant by the partnership, and that on its face the contract could have been construed as creating the relationship of joint principals between the partnership and the plaintiff, but that the plaintiff with the knowledge of the defendant furnished the security solely as an accommodation to the partnership. The judge in the memorandum stated, "I find . . . that the relations of principal and surety did not exist between the plaintiff and" the partnership. *Held,* that such statement was not a finding of a fact but was a conclusion of law.

A partnership furnished to a creditor certain security for the payment of their debt, and a third person, solely as an accommodation to the partnership, which the creditor understood, gave to him additional security and made with him a contract under seal which did not designate the third person as a surety for the partnership and which on its face could be construed as making him jointly bound with the partnership as a principal, in which case the creditor might apply to the payment of the debt the security furnished by such third person before resorting to that furnished by the partnership. *Held,* that in equity the actual relationship of the parties might be shown by evidence outside the contract in writing, that the creditor was bound by his knowledge that the third person was a surety for the partnership, and that the third person by a suit in equity against the creditor might compel him first to apply toward satisfaction of the debt the securities furnished by the partnership before resorting to those furnished by the plaintiff as an accommodation to them.

The allegations of a bill in equity were that the plaintiff, as additional security for a debt owed to the defendant by a partnership of which he was not a member, had given to the defendant his note and a mortgage of certain real estate, that without notice to or consent of the plaintiff the defendant had made a new and different agreement with the partnership as to the payment of the debt, so that the plaintiff had become entitled to a return of the note and mortgage, and that the defendant without consideration had assigned the note and mortgage to one who took them understanding the foregoing facts and who was about to foreclose the mortgage by sale. The prayers of the bill were for the enjoining of the sale, the discharge of the note and mortgage, and for general relief.

At a hearing it appeared that the assignee of the mortgage was acting as the defendant's agent, that the defendant knew that the relationship of surety and principal existed between the plaintiff and the partnership, but that he was proceeding for satisfaction of the debt against the security furnished by the plaintiff before resorting to that furnished by the partnership. It also appeared that the defendant had not made such a new agreement with the partnership as would release the security furnished by the plaintiff. *Held,* that, although the plaintiff was not entitled to the discharge of the note and mortgage which he sought in his bill, he was entitled under the prayer for general relief to a decree compelling the defendant to marshal the securities and to apply them in satisfaction of the debt in the order in which they were chargeable.

The mere fact that a surety has not received any notice of, and has not consented to, an arrangement between the creditor and the principal debtor whereby immediate payment of the debt was not insisted upon at its maturity, payments were made from week to week and the rate of interest was changed from six to fifteen per cent, will not exonerate the surety from liability if there has been no agreement extending the time of payment for any definite period and it does not appear that such arrangement has acted to the surety's prejudice.

BILL IN EQUITY, filed in the Superior Court on November 22, 1910, against Max Lebowich and Jacob Lebowich, alleging in substance that two partners doing business under the name of Flashman Brothers, having been adjudicated bankrupt and being desirous of making a composition with their creditors, sought from the defendant Max Lebowich (hereinafter called the defendant) a loan of $14,353, for which they agreed to give security of various kinds; that the plaintiff, as further security for such loan, to be used if that given by Flashman Brothers was insufficient, gave to the defendant the assignment of a certain lease and his personal note for $7,000 secured by a mortgage on certain real estate; that, without notice to or consent of the plaintiff, the defendant entered into a new agreement with Flashman Brothers extending the time for the payment of the loan by them "and upon terms different than those originally agreed upon, whereby the plaintiff became entitled to a return of said mortgage, note and assignment of lease;" that an assignment of the mortgage and note was made without consideration to the defendant Jacob Lebowich, who knew all the facts alleged and who had begun foreclosure proceedings. The prayers of the bill, besides a prayer for a preliminary injunction against proceeding with the sale or disposing of the mortgage, note or lease, sought a delivery to the plaintiff of a discharge of the mortgage and a cancellation of the note and the assignment of the lease; and general relief.

The suit was heard by *Hitchcock,* J., a commissioner having been appointed under Equity Rule 35 to take the evidence. The judge filed a memorandum and a report of material facts containing in substance the following findings and rulings:

The plaintiff in this case is a brother in law of Simon and Jacob J. Flashman, who were engaged in business under the name of Flashman Brothers.

Flashman Brothers had gone into bankruptcy, and while the bankruptcy proceedings were pending they made an offer of composition with their creditors. In order to make this composition, they were obliged to raise about $13,000 and applied to the defendant, who was engaged in the business of lending money, for a loan of that amount and offered to him certain securities. He was willing to make the loan but wanted more security than Flashman Brothers could give, and wanted some real estate security.

The preliminary negotiations resulted in certain written agreements which were entered into by the various parties, material among which were an agreement between Flashman Brothers and the defendant and an agreement between the plaintiff and the defendant; and in an assignment of a lease by the plaintiff and one Hannington to the defendant, and the giving of the note and mortgage referred to in the bill of complaint. All these writings and agreements were dated September 23, 1909.

The agreement between Flashman Brothers and the defendant was embodied in a contract under seal which in substance provided that the defendant lent to Flashman Brothers $13,000 and went to an expense of $1,353 additional for them, and that Flashman Brothers agreed to repay to him the $14,353 as follows: $250 on November 23, 1909, and $250 each and every consecutive month thereafter, with the balance of the $14,353 to be paid in six months from the date of the agreement, with interest at the rate of six per cent per annum to be paid on the dates when the payments on the principal were to be made; that Flashman Brothers conveyed to the defendant eight kinds of security furnished by them for the performance of their agreement, and also the assignment of the lease and note and mortgage of the plaintiff, the defendant to have the use of the securities in any way he saw fit, but, on payment of the $14,353, to return to Flashman Brothers

the securities furnished by them and to the plaintiff those furnished by him.

The agreement between the plaintiff and the defendant also was embodied in a contract under seal, and by it the plaintiff conveyed to the defendant the assignment of a lease and the note and mortgage, already described, as security for the payment of the debt owed to the defendant by Flashman Brothers; and on payment of that debt the defendant agreed to discharge the note and mortgage, to reassign the lease to the plaintiff and to convey to him all the securities which Flashman Bros. had given to the defendant, "the same to be held by said Bearse as collateral security for the payment to him of any and all sums that may be due to him from said Flashman Brothers and Flashman Bros., Inc." Appended to this agreement was a statement under seal by Flashman Brothers and Flashman Bros., Inc., acknowledging that the plaintiff had a lien, subject to the rights of the defendant Lebowich, upon the collateral security which they had furnished to the defendant, and assenting to the transfer by the defendant to the plaintiff of such collateral upon the payment of the loan to the defendant. "The securities deposited by the plaintiff with the defendant Max Lebowich, to wit, the mortgage and assignment of lease referred to in the bill of complaint, were deposited for the purpose of providing more security than Flashman Brothers could give and for the accommodation of Flashman Brothers, and that fact was known to the defendant Max Lebowich."

The place of business of Flashman Brothers was closed at the time these agreements were made and remained closed until the latter part of February in the year 1910, and payments were not made upon the agreement between them and Lebowich in accordance with its terms; but at the time when the place was reopened in February, 1910, a payment of $1,040, together with $82 of rent, amounting in all to $1,122, was made. At the expiration of the six months the balance due under the agreement was not paid, Flashman Brothers being unable to pay it. The defendant at that time requested payment of Flashman Brothers, but at that time did not make any demand upon or give any notice to the plaintiff in reference to the non-payment of the original loan, nor did he attempt to make any collection; he let the matter run along upon an agreement on the part of Flashman Brothers

that they would make payments at the rate of $100 a week, which were made for several weeks, and then later that they would make payments of $100 every two weeks, and with a demand on the part of the defendant and agreement on the part of Flashman Brothers that the rate of interest after the expiration of the agreement should be at the rate of one and one fourth per cent a month, or fifteen per cent a year. There was no agreement between Flashman Brothers and the defendant that the time of payment should be extended for any definite period. The rate of interest agreed upon was different from that which could have been recovered upon the agreement. The plaintiff knew subsequently to the expiration of the time limited in the agreement that payments were being made by Flashman Brothers at the rate of $100 every week or every two weeks.

The defendant Jacob Lebowich in attempting to foreclose the mortgage referred to in the bill of complaint, acted as the agent of the defendant Max Lebowich and is not a holder of said mortgage for value.

The judge's memorandum continues: "There seem to be two principal questions involved in this case. First, was the security which was furnished by the plaintiff furnished as a collateral security for the loan which the defendant made to Flashman Brothers, or was it furnished as a special security or in the nature of surety to be availed of only after the other securities were exhausted? . . . I find that the securities furnished by the plaintiff to the defendant were furnished merely as collateral securities for the loan made by the defendant to Flashman Brothers, and that the relations of principal and surety did not exist between the plaintiff and Flashman Brothers, and that there was no agreement on the part of the defendant to exhaust other securities before availing himself of the security furnished by the plaintiff.

"The next question involved in the case is, was the security furnished by the plaintiff, namely, the mortgage and note and the assignment of lease, of such a nature that the plaintiff would be released from any liability thereon, or that the security would be released, by any failure on the part of the defendant to collect the indebtedness of Flashman Brothers to him at maturity, or by any extension of time therefor or by any change in the terms thereof without the knowledge of the plaintiff? I find and rule that the

plaintiff is not released from liability, and is not entitled to relief as prayed for.

"The defendants are entitled to a decree that the bill be dismissed, and it is so ordered."

A final decree dismissing the bill was entered accordingly; and the plaintiff appealed.

*A. K. Cohen*, for the plaintiff.

*J. Lebowich*, for the defendants.

BRALEY, J. The trial judge, whose finding is not disputed, having decided, that the defendant, Jacob Lebowich, by whom the foreclosure proceedings were instituted, was not a purchaser for value of the mortgage, but acted only as the agent of the defendant Max Lebowich, the question is, whether under the frame of the bill, and upon the evidence reported, the plaintiff, who is the mortgagor, is entitled to equitable relief.

It is true, that on the face of the agreement in writing signed by the plaintiff he is not designated as a surety for the copartnership described as Flashman Brothers, whose indebtedness to this defendant was thereby secured not only by a pledge of personal property of their own, but by the note and mortgage in question, with an assignment of a lease furnished by the plaintiff. The terms of this instrument show, that he did not become obligated in any form as the defendant's debtor. It is, however, under seal, and although the plaintiff did not engage to pay the debt, the defendant contends, that in the marshalling of securities he jointly bound himself with the debtors as a principal, and upon their default and at his election he can apply in liquidation the proceeds of the mortgage, the attempted foreclosure of which the bill seeks to enjoin, before resorting to the security given by the partnership. But if the contract itself can be thus construed it has been abundantly settled, that in equity the actual relations of the parties between themselves can be proved by extrinsic evidence, and whenever the relation of surety and principal is established, and the creditor has notice of the fact, he is as much bound by this knowledge, as if the suretyship had been disclosed by apt recitals in the contract with his debtor. *Guild* v. *Butler*, 127 Mass. 386, 389. *Goodwin* v. *Massachusetts Loan & Trust Co.* 152 Mass. 189, 192.

It remains to apply this principle to the facts in the present

case. The evidence warranted the findings, that with the defendant's knowledge the mortgage was given, and the lease assigned for the purpose of providing additional security which the debtors were unable to supply, and that they were furnished solely for their accommodation. It was a question of law under these findings, and not a question of fact as the defendant further urges, whether the plaintiff became a surety and his securities were held subject to the equities existing between himself and his principals. And the further conclusion of the judge that the plaintiff did not sustain this relation is to be treated as in the nature of a ruling of law which was erroneous. *Campbell* v. *Cook*, 193 Mass. 251, 256, 257.

Upon the debtor's default the defendant possessed two funds for his protection, and the satisfaction of the debt. No rights of strangers having intervened, the plaintiff upon tender and payment of the amount due would have been subrogated to the defendant's title, and could have enforced it for the purpose of self-protection. The plaintiff, however, who had the equitable rights of a surety as to the mortgaged property, can have his interests preserved not only by subrogation but by having the property pledged by himself and the partnership marshalled and applied in satisfaction of the debt of the principal in the order in which they are chargeable. It accordingly became the defendant's duty in the first instance to exhaust the security provided by the debtors to which the plaintiff could not resort, before compelling him to redeem from the mortgage or suffer the loss of the estate. *American Bank* v. *Baker*, 4 Met. 164, 175. *Guild* v. *Butler*, 127 Mass. 386. *Kelly* v. *Herrick*, 131 Mass. 373. *Worcester Mechanics' Savings Bank* v. *Thayer*, 136 Mass. 459, 462. *Wilson* v. *Bryant*, 134 Mass. 291, 297. *King* v. *Nichols*, 138 Mass. 18, 21. *Kidd* v. *Hurley*, 9 Dick. 177. *Cuyler* v. *Ensworth*, 6 Paige, 32. *Arnold* v. *Green*, 116 N. Y. 566. *Aldrich* v. *Cooper*, 8 Ves. 382, 395. *Heyman* v. *Dubois*, L. R. 13 Eq. 158. *Duncan, Fox & Co.* v. *North & South Wales Bank*, 6 App. Cas. 1, 19; Pom. Eq. Jur. (3d ed.) §§ 1414, 1417, 1419. The plaintiff under the prayer for general relief can enforce this equitable right and compel the defendant to marshal and apply the securities and during liquidation the mortgage sale may be enjoined. *Franklin* v. *Greene*, 2 Allen, 519. *Hayes* v. *Ward*, 4 Johns. Ch. 123. *Thompson* v. *Taylor*, 72 N. Y. 32. *Irick* v.

*Black,* 2 C. E. Green, 189.   *Skinner* v. *Terhune,* 18 Stew. 565.
*Wooldridge* v. *Norris,* L. R. 6 Eq. 410.   *Allis* v. *Ware,* 28 Minn. 166.
*Trentman* v. *Eldridge,* 98 Ind. 525.   *Stafford* v. *Montgomery,* 85
Tenn. 329.

The plaintiff also contends, that he has been exonerated from
all liability by the defendant's forbearance to press promptly the
collection of the loan at maturity.   But a perusal of the evidence
supports the judge's finding, that no definite extension of time had
been granted, although it was understood that a different rate of
interest should be charged while payment was delayed.   The
collateral has not been surrendered, and the change in the rate
of interest would seem not to have been detrimental to the plain-
tiff, yet if finally a loss results, his liability would be diminished to
that extent only and he fails to show affirmatively any prejudicial
acts by the defendant sufficient to release him.   *Allen* v. *Brown,*
124 Mass. 77.   *Watertown Fire Ins. Co.* v. *Simmons,* 131 Mass. 85.
*Welch* v. *Walsh,* 177 Mass. 555.   *Boston Penny Savings Bank* v.
*Bradford,* 181 Mass. 199.   *North Avenue Savings Bank* v. *Hayes,*
188 Mass. 135, 137, 138.   *Mercantile Guaranty Co.* v. *Hilton,*
191 Mass. 141.   *Cumberland Glass Manuf. Co.* v. *Wheaton,* 208
Mass. 425, 432.   *Wakefield* v. *American Surety Co.* 209 Mass. 173,
177.   *Gordon* v. *Third National Bank,* 144 U. S. 97.

It results from what has been said, that the decree dismissing
the bill must be reversed, and a decree is to be entered enjoining
the foreclosure of the mortgage until the defendant has applied
in such form as the Superior Court after hearing the parties may
direct, the securities pledged by the debtors, and if the amount
realized is insufficient to discharge the debt with interest, and what-
ever costs and charges may have been properly incurred, the
plaintiff may redeem upon payment of the difference, with such
further decree or decrees as that court may adjudge to be neces-
sary or expedient.

*Decree accordingly.*