JANE B. MATTHEWS *vs.* WILLIAM E. MATTHEWS ET ALS.

Androscoggin.     Opinion February 6, 1930.

496

*Clifford & Clifford*, for plaintiff.
*F. A. Morey*,
*H. E. Holmes*, for defendants.

SITTING: DEASY, C. J., DUNN, STURGIS, BARNES, PATTANGALL, FARRINGTON, JJ.

DUNN, J. There are three defendants in this equity suit. The first is father-in-law to the plaintiff, the second her husband, and the third the national bank, which is payee and holder of the joint and several negotiable promissory note of the other defendants.

Appeal is by the individual defendants. The decree appealed from commanded the payee to call for payment of the note; it further provided that in the event of default of payment, resort be had to securities owned, respectively, by the makers of the note, held by the payee as collaterals; property belonging to the plaintiff to apply to any unpaid balance.

The facts admitted or undisputed, and those found below from ample evidence, may be stated briefly in the following way. In 1922, to enable plaintiff's husband to engage in the retail grocery business, five thousand dollars were requisite; the bank would lend that amount of money on security.

The three Matthewses, thus to speak collectively of the plaintiff and the individual defendants, participated in the arrangement

that plaintiff give security for twenty-five hundred dollars, and the father-in-law security for a like amount.

Plaintiff personally delivered bonds, together with an order on her savings account, to the bank teller, but did not define any instructions. Later, one of her bonds having been called for payment, plaintiff gave the bank, in substitution, an additional savings order. Certain stock certificates, which the father-in-law had at his home, he there endorsed in blank. The certificates were taken to the bank.

In the findings and decree below is detail of all the securities.

Neither plaintiff nor her father-in-law was present when the loan was made. Neither signed the demand notes, each for twenty-five hundred dollars, one dated August 16, 1922, the other August 17, 1922, executed by the husband to evidence the loan. "Each was to back me for twenty-five hundred dollars," he testified, "but I said nothing to the bank, taking it for granted as the notes were made out." Neither the plaintiff nor her father-in-law knew which note his securities had been pledged behind.

The notes remained in the bank until June 1, 1928. At this time, whatever may have been the fact about it before, the payee was cognizant of the ownership of the securities.

At the request of the payee the husband's notes were cancelled, and the joint and several note of the husband and father-in-law, payable on demand to the order of the bank for five thousand dollars, antedated in reference to interest to March 31, 1928, given and accepted in place of the cancelled notes; the father-in-law pledged his own securities, and the makers of the note purported to pledge the plaintiff's securities for payment of the renewal note. A Liberty Bond, the property of the plaintiff's husband, also was pledged.

The transaction of the renewal note was without the knowledge or consent of the plaintiff.

Several months afterward the husband, who since the original loan had been in business, mortgaged his stock in trade and trade fixtures and assigned his bills and accounts receivable to his father; the consideration being without relation to the loan at the bank. In the interim, plaintiff had endorsed a note for her husband. This

note, the face for four hundred and twenty-five dollars, is outstanding and unpaid. The husband is insolvent.

In the fifth paragraph of her bill, plaintiff alleges the promise by the individual defendants of reimbursement for any loss sustained in consequence of depositing her securities. On her husband's part such a promise would be implied. The conversations to which the plaintiff testifies, mere opinions expressive of the prospect for success in the store project, did not create any express promise.

Plaintiff prays for order and direction that payee call the renewal loan, and, if the makers of the note fail to pay it, then, agreeably to the power of sale which the note contains, that the securities of the makers be sold, the proceeds to apply towards payment of the note, plaintiff's own securities to defray any balance, and for general relief.

The payee, answering that the note should be paid, asks that the court decide who should make payment, and decide, too, the question of priority of the securities. Answer by the individual defendants sets up repudiation by the plaintiff of her undertaking respecting the loan, and prays dismissal of the bill.

One who is surety may waive the rights of a surety and contract as a principal.

Plaintiff furnished collateral to secure one-half of the loan to her husband. Her father-in-law's collateral was security for the other half. Cosuretyship was the result. Why the bank requested the renewal note is immaterial. The father-in-law was asked to sign that note, and he signed it. The cancellation of the original notes by the renewal note, and the extension thereby effected constituted a sufficient consideration to bind the cosurety as maker.

On the renewal note, the liability of the father-in-law is primary and absolute, not collateral and contingent. Besides, since the renewal, there has not been between the plaintiff and her father-in-law the mutuality of contractual relationship which makes for cosuretyship.

The father-in-law assumed and promised to pay the total loan, and thereupon the original notes were cancelled.

Although the plaintiff had not been consulted concerning the re-

newal note, she later lent at least silent sanction to what had been done.

She does not seek the complete exoneration of her securities, but of the excess beyond what may be necessary to discharge the renewal note. As has been seen, she is not cosurety with her father-in-law; she never had been cosurety with her husband; but she recognizes that her securities are collateral for the payment of the note.

One who furnishes collateral as an accommodation to secure a loan of another stands in the relation of surety to the one accommodating. *Eberhart* v. *Eyre-Shoemaker, Inc.* (Ind.), 134 N. E., 227. The great weight of authority supports the proposition that a surety, after the debt for which he is liable has become due, without out paying or being called on to pay it, may file a bill in equity in the nature of a bill quia timet to compel the principal debtor to exonerate him from liability by its payment, provided no rights of the creditor are prejudiced thereby. 21 R. C. L., 1110; *Pavarini* v. *Title Guaranty, etc., Co.*, 36 App. Cas. (D. C.), 348, Ann. Cas., 1912C, 367, and note; *Bishop* v. *Day*, 13 Vt., 81; *Dobie* v. *Fidelity, etc., Co.* (Wis.), 70, N. W., 482; *Fidelity, etc., Co.* v. *Buckley*, 75 N. H., 506; *West Huntsville, etc., Co.* v. *Alter* (Ala.), 51 So., 338; 32 Cyc., 248; Storey, Eq. Jur., Sec. 849; Pom. Eq. Jur., Sec. 1417.

Where a debtor and his surety have given security for the debt, the surety has an equity to require the property of the principal to be sold first, and the proceeds of the sale applied in satisfaction of the debt. *Robbins-Sanford Mercantile Company* v. *Johnson* (Ark.), 266 S. W., 260; 37 A. L. R., 1258, and note.

A person who, without assuming any personal liability, has given security for another's debt, may maintain an action, the debt being due and unpaid, to compel the principal debtor to exonerate his property. 5 Pom. Eq. Jur., Sec. 2342, citing *Whitman* v. *Winchester*, 15 Gray, 453; *Bearse* v. *Lebowich*, 212 Mass., 344.

A demand note is due instantly. *Ware* v. *Hewey*, 57 Me., 391; *Sanford* v. *Lancaster*, 81 Me., 434. Collection of the renewal note will not prejudice this creditor; so says the creditor itself. The payee holds as security collaterals owned by the makers of the note. It holds still other collateral, that of this plaintiff. She, it is to be borne in mind, is not party to the note but surety for its

payment. The liability of a surety is secondary to the primary liability of the principal.

If the makers of the renewal note, or either of them, default payment of that note, let the payee first resort to the securities owned by the maker. If payment of the note shall still be undischarged, resort may be had to that collateral which is the property of the plaintiff, beginning with the savings orders. Any of the plaintiff's property, not required for payment of any balance remaining due on the note, shall be returned to her.

The decree of the single justice, Mr. Justice Morrill, was eminently suitable to purpose, and, like the logic and solidity of the reasoning of his opinion, appealing to common sense.

The appeal is dismissed.

The time which the decree fixed for calling the note is expired. A new time must be fixed. This may be done below. In other respects, the decree below is affirmed.

*So ordered.*