DEPOSITORS TRUST COMPANY, etc., Plaintiff, Appellee,

v.

Alfred W. SLOBUSKY, et al., Defendants, Appellees.

Michael Colodny, Defendant, Appellant.

No. 82–1032.

United States Court of Appeals, First Circuit.

Argued Oct. 5, 1982.

Decided Nov. 8, 1982.

---

Howard M. Talenfeld, North Miami, Fla., with whom Joel L. Fass, and Colodny, Fass & Talenfeld, P.A., North Miami, Fla., were on brief, for appellant.

Frank G. Chapman, Augusta, Me., with whom Locke, Campbell & Chapman, Augusta, Me., was on brief, for appellee Depositors Trust Co.

John A. Mitchell, Portland, Me., with whom Robert A. Moore, and Verrill & Dana, Portland, Me., were on brief, for appellee Joseph M. Feldman.

Before PECK,[*] Senior Circuit Judge, CAMPBELL and BREYER, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

Michael Colodny appeals from the district court's judgment finding him liable for $100,000 on a promissory note held by Depositors Trust Company.

[*] Of the Sixth Circuit, sitting by designation.

In 1970 Joseph M. Feldman borrowed $900,000 from Depositors Trust Company in order to finance a joint venture undertaken by Feldman, Alfred Slobusky and several other parties. Slobusky's relationship to the loan was a question in dispute at trial. The bank claimed that Slobusky was a primary obligor on the loan; Colodny claimed that Slobusky was not obligated to the bank.

The loan was originally secured by shares of American Bankshares, Inc. When the stock declined in value, the bank sought additional collateral. In response to that request, the bank received a promissory note made by Colodny for $100,000. The note was made to Slobusky and was apparently endorsed by him to Depositors Trust.

In October 1977 the bank declared the Feldman loan to be in default and filed suit against the joint venturers and Colodny. Slobusky subsequently filed for bankruptcy, and the action was stayed as against him. Prior to trial the bank entered into some sort of agreement with Feldman and the joint venturers, the nature of which is now in dispute. According to the bank and Feldman, the agreement was an executory accord whereby the bank agreed to seek payment from Feldman only after seeking satisfaction from Colodny. Colodny, not a party to the agreement, claims that the agreement was a renegotiation of the $900,000 loan under the terms of which Feldman gave the bank new promissory notes and/or cash that discharged the Colodny note.

Whatever the actual substance of the agreement, the bank notified the district court of its version of the facts. Upon agreement of counsel, the court then ordered that the trial be limited to the bank's claims against Colodny and Colodny's cross-claim, for fraud, against Feldman.[1]

At the trial that was held before a different judge, Colodny made several attempts to introduce exhibits relating to the pretrial agreement between Feldman and the bank. One of the exhibits was an internal bank memorandum stating that Feldman gave the bank a $200,000 note "in exchange" for the Colodny note. Colodny also attempted to cross-examine the bank's witnesses about the agreement. The judge, referring to the pretrial order limiting the case to the bank's claim against Colodny and stressing that the relationship between the bank and Feldman was not before the jury, denied all of Colodny's requests.

After the presentation of the evidence the judge instructed the jury as to the relevant law and the special interrogatories that were to be put before them. One of the special interrogatories, requested by Colodny, asked "Was Slobusky a primary obligor?" In explaining to the jury the meaning of a primary obligor, the judge noted that Feldman was a primary obligor and that therefore "if you find that the Bank is a holder in due course, then Colodny's defense that the note was contingent [2] is 'cut off.' Under Maine law, however, the Bank still is required to attempt to recover the money first from Feldman."

Colodny requested the special interrogatory because he maintained that so long as Slobusky was not a primary obligor, equitable principles of suretyship precluded the bank from proceeding against Colodny, who made the note out to Slobusky, before exhausting its claims against Feldman. The district court ultimately rejected this argument, finding Colodny liable on the note despite the fact that the jury found Slobusky not to be a primary obligor on the Feldman debt.

Two issues are raised on this appeal. First, did the district court commit reversible error by prohibiting the introduction of Colodny's evidence concerning the pretrial agreement between Feldman and the bank? Second, did the district court err by first

---

1. Colodny contended that Feldman fraudulently enticed Slobusky to hand over the Colodny note to the bank, telling Slobusky that the note would merely serve as "window dressing" to appease bank examiners worried about the security of the $900,000 loan.

2. Colodny argued that the note was contingent on the successful rental of a building he purchased from Slobusky.

instructing the jury that the bank could not proceed against Colodny until it sought payment from Feldman and then deciding the issue to the contrary? We answer both of these questions in the negative.

We first consider the court's refusal to admit Colodny's evidence concerning the agreement between the bank and Feldman. Colodny argues that the evidence was relevant because it supported the defenses of novation, accord and satisfaction, and impairment of collateral. Insofar as appears from the record, these defenses were raised as such for the first time during a conference with the judge after the jury had been impaneled.[3] The defenses were not asserted in Colodny's pleadings nor in any pretrial motion. In the circumstances, we believe that the court had discretion to exclude this evidence.

The defenses for which Colodny wished to introduce the evidence are affirmative defenses. *See, e.g., Desjardins v. Desjardins,* 308 F.2d 111, 116 (6th Cir.1962) (defense of payment is an affirmative defense); *Marx & Co. v. Diners' Club, Inc.,* 400 F.Supp. 581, 585 (S.D.N.Y.1975) (accord and satisfaction), *aff'd in relevant part,* 550 F.2d 505 (2d Cir.), *cert. denied,* 434 U.S. 861, 98 S.Ct. 188, 54 L.Ed.2d 134 (1977); *Charles Kahn & Co. v. Sobery,* 355 F.Supp. 156, 162 (E.D.Mo.1972) (novation); *cf.* Me.Rev.Stat.Ann. tit. 11, § 3–307(2) (1964) (once plaintiff is shown to be holder, defendant bears the burden of establishing defenses). They share the "common characteristic of a bar to the right of recovery even if the general complaint were more or less admitted to." *Jakobsen v. Massachusetts Port Authority,* 520 F.2d 810, 813 (1st Cir.1975).

Under Rule 8(c) of the Federal Rules of Civil Procedure certain enumerated defenses, including accord and satisfaction, and "any other matter constituting an avoidance or affirmative defense" must be pleaded by the defendant. Failure to do so ordinarily results in the waiver of the defense and the exclusion of all evidence relevant only to it. *Jakobsen,* 520 F.2d at 813; 5 Wright & Miller, *Federal Practice & Procedure* § 1278 (1969 & Supp.1982). Such a failure, moreover, will serve on appeal to support the district court's exclusion of evidence even when the district court, as in this case, did not expressly allude to the defendant's failure to plead the defense. *Jakobsen,* 520 F.2d at 813.

To be sure, an affirmative defense may be tried with the implied consent of the parties. Fed.R.Civ.P. 15(b); *Gallegos v. Stokes,* 593 F.2d 372, 375 (10th Cir.1979). But this did not occur here. Both Depositors Trust and Feldman vigorously objected to Colodny's attempts to introduce the proffered evidence. Neither the proffered evidence nor the affirmative defenses were ever put before the jury.[4]

A party may also have recourse to a late discovered affirmative defense by obtaining leave to amend his complaint. Fed. R.Civ.P. 15. Here the alleged discharge occurred some two years after the initial answer was filed, making it understandable why the defense was not included in the original answer. But, where an affirmative defense is not raised in the pleadings, for whatever reason, the party's remedy lies through an amendment of the pleadings,

---

3. The parties did refer to the agreement between Feldman and the bank in pretrial memoranda. Colodny mentioned that agreement in a pretrial memorandum filed two weeks before the trial, and, in a brief filed the same day as Colodny's memorandum, Feldman contended that Colodny would erroneously try to argue that the agreement discharged his obligation to the bank. Colodny responded in a supplementary memorandum that the agreement affected the bank's ability to proceed against the Colodny note and the equities of the case. Colodny never, however, specifically mentioned the defenses cited above.

4. Depositors Trust and Feldman were apparently permitted to introduce some testimony relating to the fact that the balance on the $900,000 loan had been reduced and that the bank still held the right to seek recovery from Feldman. The admission of this evidence was unfortunate given the fact that Colodny was barred from broaching the subject. Nevertheless, the bank never used the evidence in any way that would suggest Colodny's affirmative defenses. More importantly, the evidence was introduced without objection.

*Transport Trailer Service, Inc. v. Upjohn Co.,* 506 F.Supp. 442 (E.D.Pa.1981), not through reliance on the defense on appeal. *Badway v. United States,* 367 F.2d 22, 25 (1st Cir.1966).

■ This requirement makes particular sense when, as was true here, the legal theories which arguably made Colodny's evidence relevant were complicated, and hard for lawyers, let alone the jury, to understand and evaluate. Adverse parties and the court have a right to timely notice of such issues. *Jakobsen,* 520 F.2d at 815. The judge was understandably reluctant to confuse the jury by accepting evidence, the purpose for which was at best obscure. In such a situation, where Colodny could point to no pleaded defense to which the evidence was relevant, the judge did not abuse his discretion by refusing to admit the evidence.

■ Colodny's second argument is also unpersuasive. He contends that the court erred by first instructing the jury that the bank would have to exhaust its claims against Feldman prior to seeking payment from Colodny and then deciding that such exhaustion was not necessary. Three issues arise from this claim. First, did the court err by failing to condition Colodny's liability on the bank's exhaustion of its claims against Feldman? Second, were its jury instructions erroneous? And third, did the inconsistency between the jury instructions and the final order create a reversible error?

Colodny has cited no authority to us for the proposition that the bank was required to exhaust its claims against Feldman prior to receiving a judgment against Colodny. The authority cited below, *Matthews v. Matthews,* 128 Me. 495, 148 A. 796 (1930), clearly compels no such conclusion. As the district court correctly noted, the equitable

right referred to in *Matthews* inures only to the benefit of a surety. Slobusky may have been a surety for Feldman, but Colodny was not. The fact that Colodny's note passed to the bank via negotiation from Slobusky does not entitle Colodny to equitable relief. Moreover, as the district court also noted, under *Matthews* a surety is merely entitled to compel a holder in due course to proceed initially against the collateral provided by the primary obligor. The parties in the instant case stipulated that all of the collateral except the Colodny note was reduced to cash by the bank. Therefore, even if *Matthews* were on point, it would not help Colodny.

Given the above discussion, it is evident that the district court's original jury instructions were overly generous to Colodny. Nevertheless, we do not believe that Colodny is entitled to a new trial on that account.

■ Ordinarily we will not review errors in jury instructions unless they were raised below. *Morris v. Travisono,* 528 F.2d 856, 859 (1st Cir.1976). In the present case, not only did Colodny fail to object to the instructions, but he was the party who requested instructions concerning primary obligors.[5] Under such circumstances, application of the plain error exception is clearly inappropriate. *See Morris v. Travisono,* 528 F.2d at 856 (plain error exception is confined to the exceptional case where fairness dictates its application).

■ Nor is reversal warranted because of the apparent inconsistency between the jury instructions and the district court's final order. Colodny argues that the jury instructions may have made the jury more willing to find the bank to be a holder in due course because the jury was told that Colodny would not be liable on the debt until the bank exhausted its claims against

**5.** Colodny did not request that the judge instruct the jury that even if the bank were a holder in due course it would still be required to recover the money from Feldman prior to seeking satisfaction from Colodny. Colodny, however, did request that the court instruct the jury that "A principal obligor is the party who is primarily liable to make payment. It is un-

disputed in this case that at least one party, that is, Feldman, is primarily liable since he signed the $900,000 note as maker." Thus the court's instructions are extremely similar to those Colodny requested and may indeed be seen as a mere further explanation of the theory embedded in Colodny's request.

Feldman. The short answer is that Colodny took this chance in foisting upon the court an incorrect view of the law. A district court is not required to decide a case incorrectly merely because it is initially persuaded by a party to grant jury instructions overly generous to that party. Any prejudice here, moreover, seems to us more theoretical than real.

*Affirmed. Costs for appellees.*