SOLOMON B. MORSE & wife *vs.* CITY OF BOSTON.

A ridge of ice formed in a sidewalk by the freezing of melted snow, and of surface water flowing from a hill by the side of the highway, on which a traveller fell while walking with due care, may be found by the jury, in an action against the town or city, to be a defect for which the defendants are liable under the Gen. Sts. *c.* 44, § 22, although he testifies that he did not stumble, and that the slipperiness of the ice was the cause of his fall.

TORT, by Mary M. Morse and her husband, on the Gen. Sts. *c.* 44, § 22, for injuries sustained by the female plaintiff through falling on a sidewalk in Webster Street in East Boston, which the defendants were bound to keep in repair. At the second trial in this court, before *Colt,* J., the jury found for the plaintiffs, and the defendants alleged exceptions.

The bill of exceptions set forth all the testimony at the trial, and that of the female plaintiff as follows : On her direct examination : " I am sixty years old. The accident happened on my return from church. Charles [her son] was with me. I was unconscious after falling. We were going along carefully. I had my son's arm. I do not know who slipped first. It was done in a moment. I saw the place as I went to church. There was no better way than to remain on the sidewalk. It was bad in the street. The street was pretty good until we came to the ice. I had my son's arm all the way from church. I was careful how I stepped. We were going along slowly and carefully. The

next thing I remember was seeing the doctor." On the cross-examination : " There was ice and snow all about ; it was general. The streets were all icy, so far as I know. I do not think I could have found a better way ; all would have been troublesome. It was a very windy day. The wind was heavy from the northwest. We went to church the same way. We stepped very carefully. There might have been more ice accumulated while at church. The sun was out. It was glare and hard and hubbly and in ridges. I cannot say why ice should accumulate while we were at church. The sidewalk was wide enough for us to walk arm in arm. I cannot account for falling ; cannot say what caused me to ; I think it was the ice. It was slipperiness that made me fall. I did not stumble. I fell purely by slipperiness, and nothing else. It was the rough and uncomfortable character of the ice. I testified on the former trial. There was nothing but mere slipperiness made me fall. It was that, and nothing else. I feel very sure of that. That is true. I testify so now."

Miss Mary M. Morse, the plaintiffs' daughter, who was just behind her mother when she fell, testified, on her direct examination : " Water would stand on the sidewalk in the summer. The surface was not smooth. There was a depression. The natural wash from the hill had caused it. It was hubbly. There was slush. Where people stepped there were footprints. For fifteen or twenty feet there was a large sheet of ice, which was higher in the centre than it was towards the end of the curbstone. I suppose the wind, as it came round the corner, blew it into ridges and it froze. There were no footprints where the accident happened. I mean by hubbles marks of footprints. The ridges were frozen." And on her cross-examination she testified : " My mother fell on the basin. There were no footprints on the basin. The ice was raised higher in the centre, and in ridges. It was five inches higher in the centre. A large patch of ice, not even ice. The snow was melted away. There was no pathway between the bank and the edge of sidewalk, but a patch of ice. The passageway was filled up with ice. It was not a smooth surface. The patch was higher in the centre than on the edge-stone. I have the same view now as on the former trial. I did

not say it was smooth where my mother fell. It was not rough by people's stepping. It was uneven. It was frozen in ridges, as if something had raised up the centre. There were circles in the ridges, some higher than others; one to two inches high, or one to three inches. It was frozen round in circular ridges, a foot and a half diameter or more; the largest diameter, three feet. The ridges were abrupt, going down on each side abruptly. I do not mean ridges like layers. It had flowed up, I think, from the bottom, and froze as it flowed over, as if a hole had been broken."

It was not disputed, on the testimony, that by the side of the highway where the accident occurred there was a bank of earth which rose to what Miss Morse, in her testimony, called " the hill."

The substance of the rulings to which the defendants objected, and of the other testimony, so far as material, is stated in the opinion.

*J. P. Healy*, for the defendants.

*A. A. Ranney*, for the plaintiffs.

CHAPMAN, C. J. The only question reserved is, whether the presiding justice erred in refusing to direct the jury to return a verdict for the defendants on the ground that the whole evidence showed that the plaintiffs had failed to prove a case, or to show a defect in the highway for which the defendants are responsible, or to show that the female plaintiff was in the exercise of due care, or which would justify them in finding a verdict for the plaintiffs. In other respects, his instructions were not excepted to.

There is positive evidence that the female plaintiff used due care; and that point is not argued for the defendants. The defence is placed wholly on the other ground taken, namely, that the record shows no evidence of a defect in the street where the accident occurred, and that the female plaintiff testifies, as to the cause of her accident, that it was purely the slipperiness of the ice, and nothing else, which made her fall, and that she did not stumble.

It is true that she does so testify. But she also testifies that the ice was "glare and hard and hubbly and in ridges," and "rough." Her husband describes it more particularly. The

accident occurred at noon on Sunday the 7th of March 1869. He says there was a heavy snow storm in February, and heavy drifts were formed. A narrow path was shovelled, which was three feet in width. On the Wednesday next previous to the day of the accident, it snowed and rained; and water ran in the pathway and scoured it out. On Friday it was exceedingly cold, and there was a layer of smooth ice. It had frozen in layers, so as to be uneven. The water spread out and " cut round among the bubbles, and when it froze it was in the same manner, leaving it rough and very smooth." He evidently applies the word smooth to the surface of that which was uneven in form. On Sunday, after the accident, it was in the same situation. Charles Morse, who was with the female plaintiff at the time of the accident, also testified that the sidewalk was " hollow " and the ice was " ridgy." Other witnesses corroborated this statement; particularly Miss Morse.

The expressions of the female plaintiff, which are relied upon by the defendants, are to be taken together with the other evidence; and the jury would be authorized to find, upon all the evidence, that the " hubbly " surface of the ice made its mere slipperiness more dangerous; and a majority of the court are of opinion that the evidence authorized the jury to find that the highway was defective, within the recently decided cases of *Luther* v. *Worcester*, 97 Mass. 269; *Hutchins* v. *Boston*, Ib. 272 note · *Street* v. *Holyoke*, 105 Mass. 82; and *Fitzgerald* v. *Woburn*, *ante*, 204.                          *Exceptions overruled.*