**Kai JAKOBSEN, Plaintiff-Appellee,**

v.

**MASSACHUSETTS PORT AUTHORITY, Defendant-Appellant.**

**No. 74–1242.**

United States Court of Appeals, First Circuit.

June 30, 1975.

Peter D. Cole, Boston, Mass., with whom Badger, Sullivan, Kelley & Cole, Boston, Mass., was on brief, for appellant.

Robert V. Costello, Boston, Mass., with whom Schneider, Reilly, Zabin & Connolly, P.C., Boston, Mass., was on brief, for appellee.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

This is an appeal by the Massachusetts Port Authority from a verdict and judgment for personal injuries sustained by plaintiff when he fell on an icy sidewalk in front of the American Airlines terminal at Logan International Airport. Plaintiff contended that he was a business invitee injured on the Port Authority's premises due to the Port Authority's negligence, and on this basis the jury found the Port Authority liable and awarded $45,000. The Port Authority on appeal argues that by statute Port Authority liability was precluded here or limited to $5,000, and that in any event the evidence did not justify a finding of business invitee status or negligence.

We briefly state the facts in their aspects most favorable to plaintiff. *See Continental Ore Co. v. Union Carbide & Carbon Corp.,* 370 U.S. 690, 696, 82 S.Ct. 1404, 8 L.Ed.2d 777 (1962). On Sunday, February 15, 1970, plaintiff, a California resident, had been visiting his cousin in Acton, Massachusetts. At about 7 p. m. they departed for Logan International Airport, where plaintiff had a reservation on an American Airlines flight to New York. During the ride to the airport plaintiff noticed that the roads were icy and slippery. It was at about 8 p. m. when plaintiff's cousin stopped his car next to the curb in front of the entrance to the American Airlines terminal. Plaintiff got out, took several steps, slipped, fell, and injured himself. The sidewalk had no sand on it and was covered with a glaze of ice, clear as glass, one-half inch thick. There was some lighting, but it was poor. There had been intermittent periods of snowfall and freezing rain during the day, but the snow and rain had stopped at about 7 p. m. That day the Port Authority had received a number of calls about the slippery condition of sidewalks at Logan, including reports of people falling during the half hour before plaintiff was injured. About 1,000 people normally used the sidewalk in front of the American Airlines entrance during one hour on a typical Sunday night.

## I

The Port Authority's main contention on appeal is that its liability is limited by Massachusetts law to at most $5,000. Under a provision in the statute creating the Port Authority, M.G.L. c. 91, App., § 1–23, the Port Authority may be liable for "defect or want of repair of ways" to the same extent as a municipal corporation would be under M.G.L. c. 84, § 15.[1] *See generally Opinion of the Justices,* 334 Mass. 721, 727, 136 N.E.2d 223, 231 (1956). Section 15 limits liability to $5,000. The provision has been held .as intended to provide an exclusive remedy for travelers injured because of a munic-

---

[1] Section 1–23 provides in pertinent part,

"[T]he Authority shall be liable to any persons sustaining bodily injury or damage in or on its property by reason of a defect or want of repair of ways in or on said projects to the same extent as though said ways were ways within the meaning of sections fifteen, eighteen and nineteen of chapter eighty-four of the General Laws . . . ."

Section 15 provides,

"If a person sustains bodily injury or damage in his property by reason of a defect or a want of repair or a want of a sufficient railing in or upon a way, and such injury or damage might have been prevented, or such defect or want of repair or want of railing might have been remedied by reasonable care and diligence on the part of the county, city, town or person by law obliged to repair the same, he may, if such county, city, town or person had or, by the exercise of proper care and diligence, might have had reasonable notice of the defect or want of repair or want of a sufficient railing, recover damages therefor from such county, city, town or person; but he shall not recover from a county, city or town more than one fifth of one percent of its state valuation last preceding the commencement of the action nor more than five thousand dollars . . . ."

Sections 18 and 19 of chapter 84 are notice provisions not at issue here.

ipality's failure to meet its statutory obligation to keep ways "reasonably safe and convenient for travelers." *Whalen v. Worcester Electric Light Co.,* 307 Mass. 169, 174–75, 29 N.E.2d 763, 767–68 (1940). The Port Authority asserts that the accident in this case occurred on a "way" within the meaning of the statute, and thus that plaintiff could not recover on a negligence theory but only for a defect, which plaintiff never alleged. And, it is further argued, since liability is limited as a matter of law to $5,000, the $10,000 amount in controversy necessary for diversity jurisdiction, 28 U.S.C. § 1332(a), was absent.

The Port Authority raised this defense for the first time in a motion for a directed verdict after the presentation of evidence,[2] and in its requested instructions. The district court, without opinion, rejected the defense then and again upon consideration of a motion for judgment notwithstanding the verdict. We affirm—not because of any position that we take on the purported statutory limitation, but because the Port Authority's failure to plead and its belated raising of the defense amounted, in our view, to a waiver thereof.

■■ The Port Authority raised in its answer, besides a general denial, only the defenses of lack of statutory notice, contributory negligence, and assumption of risk. The defense in question was not identified until the close of evidence, and was fully articulated only in the motion for judgment notwithstanding the verdict. Under Rule 8(c), Fed.R.Civ.P., certain specified defenses and "any other matter constituting an avoidance or affirmative defense" must be pleaded affirmatively. While a statutory limitation on liability is not enumerated among the listed defenses, we think it falls within the Rule's residuary clause. The Port Authority's defense shares the common characteristic of a bar to the right of recovery even if the general complaint were more or less admitted to.[3] *See* C. Wright & A. Miller, Federal Procedure and Practice, § 1270, at 292 (1969). *Compare* Rule 9(a), Fed.R.Civ.P. (lack of capacity to be sued may be raised only by "specific negative averment").

■ The ordinary consequence of failing to plead an affirmative defense is its forced waiver and its exclusion from the case. *See* Wright & Miller, *supra,* § 1278, at 339 & n. 29, and cases cited therein.

■ Doubtless, when there is no prejudice and when fairness dictates, the strictures of this rule may be relaxed. Under Rule 15 the district court may and should liberally allow an amendment to the pleadings if prejudice does not result. And if an affirmative defense is actually tried by implied consent, the pleadings may be later made to conform. Fed.R.Civ.P. 15(b). But the defense in question was not tried by implied consent. Some of the evidence received at trial was relevant to it as well as to other issues—for example, exhibits showing the layout of roads at the terminal and of the spot where plaintiff fell. But plaintiff had no reason to understand that this issue was in the process of being tried. Consent cannot possibly be implied under such circumstances. As for treating the untimely defense as a late amendment that should have been

2. Both plaintiff and defendant had rested except for the presentation of testimony by one doctor who had been unable to appear prior to the final day of trial.

3. Putting aside the jurisdictional amount argument hereinafter dealt with, we do not classify the statutory limitation as a jurisdictional defense which, like sovereign immunity, may be raised at any time. *Cf. Edelman v. Jordan,* 415 U.S. 651, 677–78, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Corkle v. United States,* 94 F.Supp. 908, 911 (D.S.C.1957). The Port Authority is a financial entity distinct from the state, with many of the characteristics of a private corporation, whose possible immunity may be waived if not properly raised. And, as discussed later in this opinion, it is by no means clear either from the statute or Massachusetts case law to what extent, if any, the Port Authority is entitled to the claimed immunity. Practicality demands that a defense of this nature be asserted early, so that it can be sorted out before a jury is impanelled, to avoid waste of judicial and litigant resources.

allowed, it presented issues of such complexity and fundamental importance to the conduct of the litigation that both plaintiff and the court could not, in fairness, be forced to forego the advance notice they were entitled to under Rule 8(c). *See generally Gaines W. Harrison & Sons, Inc. v. J. I. Case Co.,* 180 F.Supp. 243, 247 (E.D.S.C.1960); *Bernard v. United States Aircoach,* 117 F.Supp. 134, 137–38 (D.Cal.1953).

A sense of the magnitude, as well as the lack of clarity, of the Port Authority's eleventh hour claim can best be grasped from a brief analysis of the three major questions which would have to be confronted to resolve it. First would be whether the place where plaintiff fell was a "way" within the meaning of the statute. Municipal sidewalks running next to public streets and highways have been generally held to be ways, but it is unclear that the concrete strip or apron forming an entrance to the American Airlines terminal would be regarded as a general avenue for the public rather than as something else. *See, e. g., Dakin v. City of Somerville,* 262 Mass. 514, 160 N.E. 260 (1928); *Goodwin v. City of Fall River,* 228 Mass. 529, 117 N.E. 796 (1917); *Mason v. Inhabitants of Town of Winthrop,* 196 Mass. 18, 81 N.E. 644 (1907); *Stone v. Inhabitants of the Town of Attleboro,* 140 Mass. 328, 4 N.E. 570 (1885). Conceivably the Massachusetts legislature intended the statute at issue to govern the Port Authority's operation of Sumner Tunnel, Mystic River Bridge, and roadways and their sidewalks, but not to govern the operation of airport entrances. The provision governing defects on ways of the Port Authority closely parallels a provision in the statute enacting the Massachusetts Turnpike Authority four years earlier, in 1952, M.G.L. c. 81, App., § 1–15.[4]

Second would be whether the slipperiness of the walk was a "defect" or "want of repair" as those terms have been used under Massachusetts law. *See, e. g., Whittaker v. Town of Brookline,* 318 Mass. 191, 60 N.E.2d 85 (1945); *Clohecy v. City of Haverhill,* 299 Mass. 378, 12 N.E.2d 834 (1938); *Gregoire v. Lowell,* 253 Mass. 119, 148 N.E. 376 (1925). A defect normally does not exist if a natural accumulation of snow or ice, without anything else, causes the dangerous condition and accident. The ice here had been trodden, and to that extent may not have been a mere natural accumulation. This issue is complicated by the fact that modern precedents deal with municipalities, which by statute have been exempted from unsafe conditions due solely to snow or ice. M.G.L. c. 84, § 17.[5] *See, e. g., Johnson v. Town of Orange,* 320 Mass. 336, 69 N.E.2d 587 (1946). The enabling act for the Port Authority and that for the Turnpike Authority refer only to sections 15, 18, and 19, *see* notes 1 & 3 *supra,* and not to section 17. The intention of this omission and its effect on what constitutes a defect here are unclear.

Finally, and most important, would be the difficult question whether section 15, as applied to the Port Authority, was meant to be an exclusive remedy for an injury such as plaintiff's, or whether the Port Authority was also to be liable at common law for negligence. In the case of municipalities, section 15 has been held to be an exclusive remedy. *Whalen, supra.* But that holding was based on the fact that section 15 was part of an overall scheme placing a duty on mu-

---

4. Section 1–15, M.G.L. c. 81 App., provides in pertinent part,

"[T]he Authority shall be liable to any person sustaining bodily injury or damage in his property by reason of a defect or want of repair therein or thereupon to the same extent as though the turnpike were a way within the meaning of sections fifteen, eighteen and nineteen of chapter eighty-four of the General Laws . . . .."

5. Section 17 provides,

"A county, city or town shall not be liable for an injury or damage sustained upon a public way by reason of snow or ice thereon, if the place at which the injury or damage was sustained was at the time of the accident otherwise reasonably safe and convenient for travelers."

nicipalities to keep highways and townways "reasonably safe and convenient for travelers." M.G.L. c. 84, § 1. Absent this statutory duty, municipalities would be exempt from tort liability in the performance of a public or "governmental" function such as road maintenance. But as the court in *Whalen* observed, a municipality would be liable for negligence in "maintaining a project commercial in nature and undertaken for its own profits." 307 Mass. at 175, 29 N.E.2d at 768. This distinction is between "governmental" and "proprietary" functions and has been drawn in these terms:

> "A municipality, in the absence of a special statute imposing liability, is not liable for negligent acts of its officers or employees in the performance of strictly public functions imposed or permitted by the Legislature from which no special corporate advantage, pecuniary profit or enforced contribution from individuals particularly benefited, results."

*Orlando v. City of Brockton,* 295 Mass. 205, 207–08, 3 N.E.2d 794, 796 (1936).

The Port Authority, in general and in maintaining the sidewalks at airport terminals, does not fit neatly into either category. On the one hand, the Port Authority's operation of the airport is a responsibility imposed by statute and represents "essential government functions" for the "welfare of the commonwealth." M.G.L. c. 91, App., §§ 1–2, 1–17. *See generally Molinary v. City of Boston,* 333 Mass. 394, 395–96, 130 N.E.2d 925, 926–27 (1955). The Port Authority's "entire character is public, not private." *Wolfe v. Massachusetts Port Authority,* Mass., 319 N.E.2d 423, 425 (1974). On the other hand, the Port Authority was created to manage state property "in a businesslike manner." *Boston v. Massachusetts Port Authority,* Mass., 308 N.E.2d 488 (1974). The Port Authority "may sue and be sued" in its own name, M.G.L. c. 91, App., § 1–3(d), and it is an entity with an existence

apart from that of the Commonwealth. *Opinion of the Justices, supra.* The Port Authority charges tolls to vehicles and leases facilities to airlines according to frequency of flights, on a commercial basis. The Port Authority's functions are thus sustained by charges to users and not by taxes. An award against the Port Authority, in contrast to an award against a municipality, would not ultimately be imposed on the taxpayers. Tort suits have been allowed where the municipality derives a pecuniary benefit or corporate advantage from the execution of its duties, though the operations are ultimately to the public benefit. *See, e. g., Sloper v. Quincy,* 301 Mass. 20, 23–24, 16 N.E.2d 14, 17 (1938). In the context of operation of a parking garage at the airport, the Massachusetts appeals court for Suffolk has held that the Port Authority may be liable in tort for negligence. *American Auto Sales, Inc. v. Massachusetts Port Auth.,* 308 N.E.2d 781 (Mass.App.1974). Neither party has provided any cases directly on the point here at issue.

We describe these difficult questions to illustrate the unreasonableness of presenting them for the first time when the trial was virtually over. While the Federal Rules reflect a universal trend away from stereotyped pleading, they do not presage abandonment of the requirements that parties be given reasonable advance notice of the major issues to be raised. Issues of this magnitude are not to be tossed at one's opponent in a jury trial just before the charge; nor can the district court be required to digest such matters for the first time at the close of the evidence. The Massachusetts statutes and decisions would not have made it obvious that the Port Authority would, on these facts, raise this defense or indeed that it was available. Plaintiff, if the matter occurred to him at all, might well have assumed that the Port Authority had waived any such attempted defense. It is small wonder that plaintiff's initial response to the defense was inadequate.[6]

---

**6.** Plaintiff's counsel initially argued that the relevant provisions under chapter 84, *see* note

1, *supra,* were merely notice provisions. Plaintiff did not assert prejudice at that time.

Prejudice was not limited merely to cutting down the plaintiff's time to study and meet an extremely difficult issue. The delay undercut plaintiff's ability to develop facts and fashion his case in a manner relevant to this defense. It also prejudiced the judge's ability to focus on the facts as they unfolded so as to rule properly on the claim, or, indeed, instruct the jury on their role, if any, in applying the statutory provision. Whether the location of the accident was a "way," the cause a "defect," and the Port Authority's operation of the airport a strictly public function or commercial enterprise, depended upon a reasonable interpretation of the facts developed within the proper context. *See generally Chaffee v. Inhabitants of the Town of Oxford*, 308 Mass. 520, 33 N.E.2d 298 (1941).

■ The Port Authority, by way of explanation, argues that it was not until evidence of where plaintiff fell was presented at trial that it was clear that the statute covered the matter. In view of the details provided by plaintiff in answer to interrogatories, this argument seems frivolous. And in any event, certainty of proof is not a precondition to the necessity to plead an affirmative defense. If the availability of the defense was that obscure to the Port Authority, there was all the more reason that it should be flagged early for the benefit of plaintiff, who would have to meet it. Moreover, if the statute is an exclusive remedy, the location of the accident would be irrelevant to the fact that liability could never exceed $5,000.

■ We conclude that the court committed no error in denying the Port Authority's statutory defense.[7] In so deciding we do not rule on the merits of that defense but limit ourselves to its obvious untimeliness in this case.

II

■ The Port Authority argues that even if there is no statutory limitation upon its liability, it would not be liable to plaintiff for ordinary negligence since plaintiff was a business invitee of American Airlines, not of the Port Authority itself. A landlord, it is said, owes a tenant's invitee no duty to remove a natural accumulation of snow and ice, but only a duty to maintain the premises as they were at the time of letting. However, the evidence here would support a finding that the accident occurred on a common passageway which the Port Authority had invited the public to use and for which it had responsibility. Under Massachusetts law the owner of property, such as a shopping center, may be liable as a business invitor for injuries occurring on a common way to a patron of a lessee if the owner maintains control over the common way. *See, e. g., Underhill v. Shactman*, 337 Mass. 730, 151 N.E.2d 287 (1958). The Port Authority further complains that the district court did not in its instructions define the limited duty owed to a tenant's customers. However,

---

Defendant Port Authority's counsel in the motion for a directed verdict miscited the relevant provision of chapter 91, App. and at that time did not seem to be raising its later argument that unless the accident was a result of a defect on a way, no liability would exist at all.

7. The Port Authority argues that its motion to dismiss for lack of the $10,000 jurisdictional amount should at least have been granted, presumably because that raises a jurisdictional issue that can at any time be noted. We disagree. The Supreme Court has stated, "It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *St. Paul Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 289, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938). Surely, says the

Port Authority, a $5,000 limitation provides the requisite certainty. However, as discussed in text, there are uncertainties as to whether the $5,000 limitation is applicable. Moreover, the statutory limitation claimed here was not raised at the outset. It was certainly not clear then. Indeed, it never became clear because of the possibility of waiver of any limitation that existed. A basic purpose of the jurisdictional amount requirement is to relieve the federal courts of the burden of diversity cases involving lesser amounts. If it does not become clear until the end of trial that a lesser amount is really at stake, it would not serve this purpose to dismiss the action then. Dismissal would only waste the time of some other court and encourage some parties for strategic reasons to conceal defenses.

it never objected after the court failed to give the only instruction [8] proposed on the subject. Fed.R.Civ.P. 51. It may not, therefore, assign the alleged error on appeal. *See, e. g., Carmen Carillo v. Westbulk,* 514 F.2d 1214 (1st Cir. 1975).

■ Nor can we say that the district court erred in instructing the jury that plaintiff was a business invitee of the Port Authority to whom a duty of reasonable care was owed. The fact that the Port Authority operates the airport in the public interest and not for corporate profit would not, absent a statute, affect plaintiff's status as one who entered the premises of an entity operating a business of a commercial character. Moreover, the Supreme Judicial Court of Massachusetts has abrogated the common law distinctions between classes of invitees and licensees, extending to those in possession of land the duty of ordinary care to all lawful visitors. *Mounsey v. Ellard,* Mass., 297 N.E.2d 43 (1973), and the court has recently applied its decision retroactively, *Bouchard v. DeGagne,* 1975 Mass.Adv.Sh. 1856, 329 N.E.2d 114 (1975).

### III

■ The Port Authority argues that the evidence did not warrant a finding of negligence. We do not agree. Notwithstanding testimony by a Port Authority official that the airport walks had been plowed three or four times during the period from 3 p.m. until 11 p.m. on the day of plaintiff's accident, plaintiff and two American Airlines agents testified that the walk where plaintiff fell was covered with a half inch of glazed ice and had no sand on it. Plaintiff also testified that the lighting was poor. The fact that the snow and ice may have accumulated naturally on the sidewalk does not preclude a finding of negligence; the jury might have inferred that the slick condition of the packed ice resulted from trodding by a constant stream of people entering the American Airlines terminal at the time of the accident on a Sunday evening— about 1,000 per hour. *See Spaulding v. Inhabitants of Town of Beverley,* 167 Mass. 149, 45 N.E. 1 (1896); *Morse v. City of Boston,* 109 Mass. 446 (1872); *Luther v. City of Worcester,* 97 Mass. 268 (1867). There was sufficient evidence to warrant a determination that the Port Authority had notice of the dangerous condition of the sidewalk outside the American Airlines terminal before plaintiff's accident. *See, e. g., Baldassari v. Product Terminal Realty Corp.,* 1972 Mass.Adv.Sh. 953, 282 N.E.2d 649. Intermittent periods of precipitation in the form of snow and freezing rain had occurred during the day and had stopped about an hour before plaintiff's injury. The situation was sufficiently serious for the Port Authority to remove ice and to sand the runways in order for planes to land, yet only one worker was assigned to clear the walkway for pedestrians. *See, e. g., Delano v. Garrettson-Ellis Lumber . Co.,* 1972 Mass.Adv.Sh. 671, 674, 281 N.E.2d 282. The Port Authority had over 100 calls during the day about icy conditions at the airport, a dozen being specifically complaints about sidewalks. At 7:40 p.m.—20 minutes before plaintiff's accident—the Port Authority learned that three people had fallen on sidewalks at Logan. The Port Authority took no steps to warn pedestrians of the danger. The evidence supported a conclusion that the Port Authority ascertained the dangerous condition and had reasonable opportunity to remove the ice or to sand the sidewalk by the time plaintiff fell.

*Affirmed.*

---

8. The requested instruction, number 13, could not in any event have been given in the form put, as it misstated the law.