JOYCE C. REARDON *vs.* MATTHEW S. PARISI, JR.,[1] & others.[2]

No. 03-P-1001.

Essex. May 4, 2004. - February 16, 2005.

Present: DUFFLY, COWIN, & COHEN, JJ.

*Negligence,* Snow and ice, One owning or controlling real estate. *Snow and Ice.*

In a negligence action against a realty trust which owned certain land, including a parking lot, and its trustee for injuries the plaintiff suffered when she slipped on ice and fell as she traversed the parking lot on her way to work, the judge erred in entering summary judgment for the defendants, where it was a question of fact whether the icy surface that formed on the parking lot as a result of runoff from snow plowed to the northern edge of the lot was a condition that was created or heightened by the way the parking lot was constructed. [43-46]

CIVIL ACTION commenced in the Superior Court Department on September 1, 2000.

The case was heard by *Diane M. Kottmyer*, J., on a motion for summary judgment.

*Ronald B. Horvitz* for the plaintiff.

*Christopher W. Costello* for the defendants.

DUFFLY, J. In this tort action, the plaintiff, Joyce C. Reardon, alleges that the defendants' negligence caused an unnatural accumulation of snow and ice to form on a private parking lot, resulting in her injuries when she slipped on the ice and fell as she traversed the lot on her way to work. A judge of the Superior Court allowed the defendants' motion for summary judgment, and Reardon filed this appeal. We reverse.

1. *Summary of facts and proceedings.* "Ordinarily, summary

[1]Also known as Mike Parisi, in his individual capacity and as trustee of Amanda Realty Trust.

[2]Amanda Realty Trust and Three Lanterns Ship Supply, Inc.

judgment is not an appropriate means to resolve negligence cases, because usually the question of negligence is one of fact. However, a judge may decide the issue as matter of law when no rational view of the evidence permits a finding of negligence . . . . Because the burden is on the movant, the evidence presented is always construed in favor of the party opposing the motion, and the opposing party is given the benefit of all reasonable inferences that can be drawn from it." *Goulart* v. *Canton Hous. Authy.*, 57 Mass. App. Ct. 440, 441 (2003). "A court should not grant a party's motion for summary judgment 'merely because the facts he offers appear more plausible than those tendered in opposition, or because it appears that the adversary is unlikely to prevail at trial.' " *Id.*, quoting from *Attorney Gen.* v. *Bailey*, 386 Mass. 367, 370, cert. denied, *Bailey* v. *Bellotti*, 459 U.S. 970 (1982). We summarize the materials submitted to the Superior Court in light of these principles.

At the time of the accident, Reardon was an employee of Northern Ocean Marine, Inc., located at 3-5 Parker Street in Gloucester. The owner of 3-5 Parker Street was the defendant Amanda Realty Trust.[3] The defendant Matthew Parisi was a trustee of the trust, as well as the president of Three Lanterns Ship Supply, Inc. (Three Lanterns), a commercial tenant at 3-5 Parker Street, and in that dual capacity, Parisi retained another tenant of the building to perform snow-plowing services on the subject parking lot as needed. Three Lanterns paid for the plowing. Parisi retained responsibility for sanding and salting. In this opinion we do not resolve any issues surrounding the relationships between or among the defendants, or the nature or validity of the trust. See note 3, *supra*. Our focus is the accident that occurred on the morning of February 10, 2000, and whether on the evidence viewed favorably to the plaintiff, any case for negligence was made out.

. It had snowed during several days in middle to late January,

---

[3]The record does not disclose the nature of the trust, or whether it was a nominee trust and, if so, its beneficiaries. Responding to deposition questions, Parisi indicated he was uncertain as to the identity of any beneficiaries, although he suggested that he and his wife might be beneficiaries, along with others. Any issues regarding the identity of any proper parties to be substituted for the trust need not be resolved at this point in the proceedings. See discussion, *infra*.

2000, and the snow had been plowed to the northern edge of the parking lot in front of the building (the front lot), where it remained until February 10. Beyond that northern edge of the lot was another parking lot (the adjacent lot). Employees of tenants at 3-5 Parker Street were not permitted to park in the front lot, which was reserved for Parisi and retail customers of Three Lanterns, but were instructed by Parisi to park in the adjacent lot. In order to reach the entrance to 3-5 Parker Street, an employee parking in this adjacent lot was required, upon leaving her parked car, to walk to a short pedestrian pathway that cut across a narrow, landscaped berm dividing the two lots, then onto the front parking lot and from there to the building's entrance. This was the route that Reardon took on the morning of February 10, as she had twice a day on every day previously that she had come into work.

During the preceding day, February 9, warm weather had caused the snow piled along the berm between the two lots to thaw; this was followed by freezing nighttime temperatures that caused the melted snow to turn to ice so that, at least by 7:00 A.M. on the morning of February 10, the front lot in the area on which Reardon was required to walk was covered with a shiny, thin sheet of clear ice, "like an enamel." One witness, James LeBoeuf, arrived at 7:00 A.M. and observed what he described as "glare ice." He almost fell as he alighted from his truck and had difficulty reaching the front of the building. There was no place between the pathway and the entrance to the building where the asphalt was bare so as to provide traction for pedestrians.[4] The ice had formed a swath at the northern end of the parking lot that was widest against the berm and in front of the pathway and narrowed as it reached the drain. The area directly in front of the building entrance was salted at the time

[4]Parisi arrived for work at 7:50 A.M. on February 10, 2000, parked his vehicle at the southwesterly corner of the lot in front of the building, and walked directly to the front door and entered the building. His testimony, that the place where the accident occurred was "clear and bare" at that time, is contradicted by other witnesses, who testified that the site was covered by ice before, during, and after the accident. According to LeBoeuf, when Parsi arrived fifty minutes after LeBoeuf had arrived, Parisi stated to LeBoeuf that "there was ice in the lot, more like black ice from runoff from the snow next to the building."

of the accident, but the front parking lot had not been sanded or salted prior to the accident.

Reardon arrived for work at 8:30 A.M., parked her car in the adjacent lot, and walked from her car to the pedestrian path and onto the front lot where she slipped and fell on the ice. There was an audible snap or crack when Reardon fell that was heard by a witness at the scene. Reardon suffered fractures to two bones in her lower leg.

Parisi had purchased the parcel of real estate at 3-5 Parker Street several years earlier and had the building and parking lot built on the vacant land. Construction was completed in 1986, and Parisi commenced operation of Three Lanterns at that time. In the course of constructing the parking lot, the land was graded, and the contour or pitch of the land altered so that, according to the plaintiff, the parking lot was a bowl shape, sloping towards a drain in the middle of the bowl, to provide for rapid drainage of water. The grade was steepest in the area to the north of the parking lot, where snow was routinely piled during the winter, and water runoff from melting snow at that point in the lot flowed in a channel toward the drain. When a thaw was followed by freezing temperatures, a wedge-shaped channel or swath of ice formed on the northern portion of the lot. Although the ice was clear and black, witnesses could see that it was ice that covered the lot and not water. Parisi had, over the years since 1986, observed on many occasions that a daytime thawing and overnight freezing would cause the melting water from the plowed snowbank to flow towards the drain and freeze on the downward slope, necessitating his sanding and salting of the iced-over areas when he arrived in the morning. Others had slipped on the ice formed in the area and had complained to Parisi.

On motion of the defendants, the judge entered summary judgment for the defendants. Concluding that, under the common law, a natural accumulation of ice on property is not an actionable defect, the judge determined that "there is no evidence that grading of the parking lot caused the runoff to be collected in an artificial channel. The existence of a slope leading to a drain is not a defect. . . . As a matter of law, the

evidence in the record is insufficient to create a question of material fact as to negligence on the part of any defendant."[5]

2. *Discussion.* We begin our discussion by noting that the large body of decisional law devoted to the question of negligence in connection with injuries resulting from a fall on ice can be divided into two general categories: (1) those involving injury suffered by a pedestrian slipping on ice on a public sidewalk or highway in front of a landowner's premises; and (2) those involving injury suffered by one lawfully on a landowner's property who slips on ice on that property.

As to the first category of cases, it has long been held that "[t]here is no duty upon an owner of premises abutting a public sidewalk 'to keep [it] clear from snow, ice or water which is upon it from natural causes, or to guard against accident by placing sawdust or other substances upon the sidewalk.' " *Gamere* v. *236 Commonwealth Ave. Condominium Assn.*, 19 Mass. App. Ct. 359, 362 (1985), quoting from *Mahoney* v. *Perreault*, 275 Mass. 251, 253 (1931). See also cases cited in *Mahoney*, 275 Mass. at 253-254, and in *Cooper* v. *Braver, Healey & Co.*, 320 Mass. 138, 139-140 (1946) (owner of land has right to clear snow from front yard and deposit it in a pile away from sidewalk; this does not create artificial condition resulting in negligence). It is only when the landowner takes some action to "enhance in quantity or distribute dangerously the natural precipitation above the sidewalk" that a nuisance is created and liability may be imposed. *Jefferson* v. *L'Heureux*, 293 Mass. 490, 494 (1936). See *Field* v. *Gowdy*, 199 Mass. 568 (1908) (spout designed by defendant for disposal of melting snow from roof caused surface water to collect in definite channel that discharged on public way where ice formed, creating public nuisance for which defendant could be sued); *Drake* v. *Taylor*, 203 Mass. 528 (1909) (same); *Maloney* v. *Hayes*, 206 Mass. 1 (1910) (same); *Cochran* v. *Barton*, 233 Mass. 147 (1919) (same).

This first category of cases involves considerations that are different from those at issue in the second category. Compare *Gamere* v. *236 Commonwealth Ave. Condominium Assn., supra*

---

[5]The motion judge also noted that there were "no surface defects in the parking lot — no holes, ruts or cracks in the pavement."

at 361, 362 n.3 (it is the nondelegable "responsibility of the cities and towns to keep the public ways in reasonably safe condition for travelers"; duty created by statute requiring property owner to remove ice runs to municipality and is not for benefit of persons injured by fall,[6] with *Mounsey* v. *Ellard,* 363 Mass. 693, 708-709 (1973) (duty of reasonable care in the circumstances owed by a landowner to all lawful visitors is based in part on "the foreseeability of the visitor's presence and the time, manner, place and surrounding circumstances of his entry," rather than on the visitor's status as licensee or invitee). Cf. *Cavanagh* v. *Block,* 192 Mass. 63, 65 (1906) (cases involving injury to plaintiff while on defendant's property "have no application to" action in which landowner was charged with creating nuisance on abutting way making it unsafe for travel).

We therefore focus on the second category of cases involving injuries to persons lawfully on the premises of a defendant landowner. These cases impose on a landowner an affirmative duty of reasonable care in the circumstances. See *Mounsey* v. *Ellard, supra.* See also *Aylward* v. *McCloskey,* 412 Mass. 77, 79-80 (1992). The duty "does not make landowners and occupiers insurers of their property nor does it impose unreasonable maintenance burdens." *Mounsey* v. *Ellard, supra* at 709. The duty does, however, "include[] the taking of reasonable precautions for the safety of visitors, including measures against the hazards caused by ice or snow conditions." *Intriligator* v. *Boston,* 18 Mass. App. Ct. 703, 705 (1984), *S.C.,* 395 Mass. 489 (1985).

We recently summarized the parameters of a landowner's duty in Massachusetts:

> "Landowners owe a duty of reasonable care under the circumstances to those lawfully on their property. . . . As

---

[6]See also, e.g., *Riccitelli* v. *Sternfeld,* 349 Ill. App. 63, 66-67 (1952) ("Heavy snowfalls create emergency conditions and a generally hazardous situation throughout this city [Chicago]. There have been occasions in which the entire citizenry has been mobilized to make paths along sidewalks and to clear streets for traffic. In the urgency of clearing a path and of making way for the renewal of normal traffic, both property owners and the city do their best to find a place for snow. . . . In one sense, a dangerous situation is created, but much less dangerous than would be created if no one undertook to do anything.")

a matter of law, 'this duty is not violated by a failure to remove a natural accumulation of snow or ice.' *Sullivan* v. *Brookline*, 416 Mass. 825, 827 (1994). Simply put, 'landowners are liable only for injuries caused by defects existing on their property and . . . the law does not regard the natural accumulation of snow and ice as an actionable property defect, if it regards such weather conditions as a defect at all.' *Aylward* v. *McCloskey*, 412 Mass. 77, 79 (1992). . . . Even under the Massachusetts rule, however, liability may attach 'where some act or failure to act has changed the condition of naturally accumulated snow and ice, and the elements alone or in connection with the land become a hazard to lawful visitors.' *Aylward* v. *McCloskey*, *supra* at 80 n. 3."

*Goulart* v. *Canton Hous. Authy.*, 57 Mass. App. Ct. at 442.

Here, in addition to evidence previously summarized, there was evidence that Parisi, in creating the front parking lot, had given the parking lot a certain pitch in order to increase water drainage. According to Reardon's expert, the recommended slope for various surfaces, which in his view was also applicable to parking lots, is one-fourth inch per foot, whereas the slope in the area where Reardon fell was one-half inch per foot, or twice the degree of recommended pitch. The slopes, contours, and pitches on the lot, which included a "trough-like channel running roughly North-South in approximately the middle of the lot," were artificially created on the defendants' property to accommodate drainage concerns. Although the expert deemed the design to be "acceptable," the focus of his opinion was "not that the lot's design, *per se*, is defective." Rather, it was his opinion that "[t]he degree of slope was more than acceptable or necessary for water to flow quickly to the drain grate. . . . The degree of danger and hazard of the iced-over slope increases with the degree of pitch. And, the degree of vigilance required on the part of the owner . . . increases with the degree of pitch of the iced slope," requiring constant vigilance to maintain a safe site through regular and liberal application of salt and sand to melt the ice. This evidence, if believed, was sufficient to establish that "some act or failure to act has changed the condition of naturally accumulated snow

and ice, and the elements alone or in connection with the land [became] a hazard to lawful visitors." *Sullivan* v. *Brookline*, 416 Mass. at 827, quoting from *Aylward* v. *McCloskey*, 412 Mass. 77, 80 n.3 (1992).

It was a question of fact whether the icy surface that formed on the parking lot as a result of runoff from snow plowed to the northern edge of the lot was a condition that was created or heightened by the way the parking lot was constructed.[7] The motion for summary judgment in favor of the defendants should not have been allowed.

*Judgment reversed.*

---

[7]Reardon makes a separate argument that the defendants breached their duty of reasonable care in the circumstances by the failure to sand and salt the melted snow when Parisi knew or should have known that ice had formed on the lot. Arguments made in footnotes or contained in memoranda to which the brief refers do not rise to the level of proper appellate argument as required by Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). In any event, based on the record evidence at this procedural point in the case, it appears that this argument also depends on the contour of the lot. We therefore do not address whether liability could attach in the absence of man-made conditions which contributed to the hazard, but where the landlord had ample opportunity after the snowbank had melted and ice formed to sand and salt the area he had designated for travel. See *Thornton* v. *First Natl. Stores, Inc.*, 340 Mass. 222, 224-225 (1960); *Mounsey* v. *Ellard*, 363 Mass. at 708-709; *Barry* v. *Beverly Enterprises-Mass., Inc.*, 418 Mass. 590, 593-594 (1994); *Intriligator* v. *Boston*, 18 Mass. App. Ct. at 705.