Tucker, Richard T., J.
Doris Garand (Garand) brings this action against her landlord, Worcester Housing Authority (WHA), for negligence (Count One), breach of contract (Count Two), and breach of the implied warranty of habitability (Count Three). In February 2004, Garand slipped and fell on ice outside her apartment building, sustaining fractures to her hip, arm and wrist. Garand claims that WHA breached a duty of care to remove snow and ice from the path in a timely fashion, particularly in light of a lease term expressly providing for the “reasonably prompt removal of snow and ice from common walkways and driveways.” WHA defends asserting that it bore no legal obligation to make the path safe at that time because the conditions resulted from the natural accumulation of snow and ice. WHA now moves for summary judgment on all counts.
Legal Standard
On WHA’s motion for summary judgment, the Court views the record in the light most favorable to Garand. Mass.R.Civ.P. 56(c); see Judson v. Essex Agric. & Technical Inst., 418 Mass. 159, 162 (1994). Because Garand bears the ultimate burden of proving negligence, breach of contract, and/or breach of the implied warranty of habitability, WHA must demonstrate that Garand “has no reasonable expectation of proving an essential element of [her] case” in order to prevail on its motion. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). If a genuine issue of material fact exists anywhere in the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, then WHA is not entitled to summary judgment. Mass.R.Civ.P. 56(c); Kourouvacilis, 410 Mass. at 711.
Massachusetts law generally imposes no duty on owners or possessors of land to remove a natural accumulation of snow and ice. Sullivan v. Brookline, 416 Mass. 825, 827 (1994). Consequently, plaintiffs who injure themselves as a result of slipping and falling on snow and ice many times cannot prevail in tort against the landowner or possessor. E.g., Aylward v. McCloskey, 412 Mass. 77, 80 (1992). Liability has attached, however, when the negligence of an owner or possessor permits an unnatural and dangerous condition of snow and ice to develop on his property, Reardon v. Parisi, 63 Mass.App.Ct. 39, 46 (2005), or “where some act or failure to act has changed a condition of naturally accumulated snow and ice and the elements alone or in connection with the land become a hazard to lawful visitors,” Aylward, 412 Mass. at 80 n.3. Additionally liability of a possessor for snow and ice has also been founded on the condition of the snow and ice establishing that the possessor allowed a hazard to exist for an extended period of time. Delano v. Garrettson-Ellis Lumber Corp., 361 Mass. 500, 503 (1972); Thornton v. First National Stores, Inc., 340 Mass. 222, 224-25 (1960). Lastly, an exception to the general rule applies where landlords have promised within their lease terms to remove snow and ice, but thereafter have negligently failed to do so. See, Falden v. Gordon, 333 Mass. 135, 137 (1955) (liability not established, however, due to limited time that condition existed); Carey v. Medley, 327 Mass. 189, 193 (1951).
Analysis
Garand argues that WHA acted negligently and, therefore, is not entitled to invoke the general rule insulating owners from tort liability for accidents involving naturally occurring snow and ice on their property. First, Garand claims that the snow and ice that caused her injuries constituted an unnatural accumulation. Second, she contends that WHA breached a duty it assumed under the lease by failing to remove the snow and ice blanketing the common walkways for at least one week.[1]
A. Unnatural v. Natural Accumulation of Snow and Ice
A property owner or possessor has a duty to take reasonable precautions to protect visitors from hazards caused by snow and ice, but that duty extends to unnatural accumulations only. Mounsey v. Ellard, 363 Mass. 693, 694 (1973); Sullivan, 416 Mass. at 827. In determining whether an accumulation of snow and ice has changed sufficiently to give rise to a legal duty, the case law indicates that courts routinely analyze the relationship between the hazardousness of the conditions and the conduct of the owner or possessor. Generally, a finding of a breach of the duty owed depends on the degree to which the owner or possessor was responsible for encouraging the alleged unnatural accumulation, either by acting or failing to act.[2] See Aylward, 412 Mass. at 80 n.3 (noting that a property defect exists “in circumstances where some act or failure to act has changed the condition of naturally accumulated snow and ice, and the elements alone or in connection with the land become a hazard to lawful visitors”).
Hence, shoveling snow off a ramp, exposing preexisting ice, was not negligence because the defendant did not actually create or change the ice. Sullivan, 416 Mass. at 827. Likewise, neither the use of salt on ice, resulting in partial melting and a more slippery surface, Goulart v. Canton Hous. Auth., 57 Mass.App.Ct. 440, 443 (2003), nor piling snow that melted and then re-froze over a walkway, forming ice, Cooper v. Braver, Healey & Co., 320 Mass. 138, 139-40 (1946), constituted actionable conduct in tort. Cf. Reardon, 63 Mass.App.Ct. at 45-46 (reversing summary judgment for defendant where it was a question of fact whether *180 the icy surface that formed on a parking lot as a result of runoff from snow plowed off to the side was a condition that was either created or exacerbated by the way the parking lot was constructed).
Decisions imposing liability on owners or possessors often rely on evidence of unnatural qualities of the accumulation. See Delano v. Garrettson-Ellis Lumber Co., 361 Mass. 500, 501 (1972) (“ ‘muddy ice,’with tire marks and ruts three and four inches deep, covered and obscured by about half an inch of powdery snow”); Mounsey, 363 Mass. at 694 (thick, large patches of ice on driveway underneath house’s defective drainage system); Phipps v. Aptucxet Post #5988 V.F.W. Bldg. Ass’n, Inc., 7 Mass.App.Ct. 928, 929 (1979) (“footprints . . . and ruts like automobile tire tracks that had been frozen”). Evidence including (but not limited to) dirty, packed, or rutted ice demonstrates a change of conditions that had existed long enough and were sufficiently dangerous that a reasonable owner or possessor, in the ordinary course of surveying her property, would have discovered and remedied the hazards before the plaintiff was injured. Willett v. Pilotte, 329 Mass. 610, 613 (1953). The kind of notice of the unnatural accumulation afforded the owner or possessor is another important factor that courts consider. See Jakobsen v. Mass. Port Auth., 520 F.2d 810, 817 (1st Cir. 1975) (evidence of over one hundred calls during one day about icy conditions at airport, with a dozen complaining specifically about the sidewalks, supported a conclusion that defendant ascertained the dangerous conditions and had reasonable opportunity to remove the ice or sand the sidewalk before plaintiff fell).
Garand alleges that the snow and ice that caused her to fall existed on the sidewalk for at least one week prior to the incident. The record is otherwise bereft of any indicia that the accumulation was in an altered state. There is no evidence, for instance, of ice thickness or ruts, footprints, or debris frozen in the ice. Rather, Garand argues that the ice and snow became an unnatural accumulation simply due to the passage of time. Some courts have identified duration as a key element transforming a natural accumulation into an unreasonable hazard. See Intriligator v. Boston, 18 Mass.App.Ct. 703, 705 (1985) (injury occurred six days after a snowfall of nine inches, and a month after the blizzard of 1978); Jakobsen, 520 F.2d at 817 (plaintiff slipped at approximately 8 P.M. after intermittent periods of snow and freezing rain precipitated over the course of the entire day).
Those cases can be distinguished from the one at bar, however, by extraordinary circumstances attending the prolonged neglect of the accumulations. Specifically, both the Intriligator and Jakobsen plaintiffs sustained injuries in busy pedestrian locations where incessant footfalls compacted the snow and ice sufficiently to create an actionable properly defect. See Intriligator, 18 Mass.App.Ct. at 705 (holding that plaintiff fell in a “usually crowded” commercial area where trampling changed the surface of the accumulation causing it to become hard-packed and slick); Jakobsen, 520 F.2d at 817 (acknowledging a justifiable inference that the slick condition of the packed ice resulted from “trodding by a constant stream of people” entering an airport terminal). While there were footprints in the snow covering the ice where Garand fell, a walkway adjacent to an ordinary apartment building is not analogous to a crowded commercial area or an airport terminal. Evidence showing that an accumulation persisted for an extended period, standing alone, is insufficient as a matter of law to establish the existence of an unnatural accumulation of snow and ice. See, Collins v. Collins, 301 Mass. 151, 152 (1938) (no liability where scant evidence offered as to the appearance or duration of the icy condition in issue).
B. The Snow and Ice Removal Provision in the Lease
It is well established that a landlord who agrees in a lease to remove snow and ice and negligently fails to perform that duty, may be liable. Falden v. Gordon, 333 Mass. at 137; Carey, 327 Mass. at 193. For Garand to survive WHA’s Motion for Summary Judgment, she must satisfy her burden of producing a genuine issue of material fact with respect to the reasonableness of WHA’s conduct.
It is undisputed that WHA was in control of the property at the time Garand was injured, and that it had promised in the lease to remove snow from the common walkways promptly. Garand slipped and fell at 12:30 P.M. on Saturday, February 7, 2004, while walking to her car on a frequently used path leading to the parking lot. There was a layer of ice underneath approximately two inches of fresh snow, which had fallen the night before. Garand claims that she was not aware of the ice, although she did know that there had been an ice storm two or three days prior that she believed the WHA had not yet cleared. Indeed, Garand testified that WHA had not treated the sidewalks for at least one week.
Based on this evidence, a jury could find that WHA should have cleared the path to the parking lot before the afternoon of February 7, and that the failure to do so is actionable negligence. WHA forsook at least two “reasonably prompt” opportunities to remove the snow; first, in the aftermath of the ice storm earlier that week, and again on the morning of February 7, immediately after the two-inch snowfall. The oft-quoted policy justification for limiting the duty to remove natural accumulations, *181 Collins, 301 Mass. at 152, cuts both ways. A New England property owner should know that an accumulation, if neglected long enough, can develop layers of ice and snow, thereby becoming a latent hazard to pedestrians. See Willett, 329 Mass. at 614 (new snow, twigs, and needles covering ice at a Christmas tree stand were evidence of defendant’s negligence). WHA’s failure to clear a commonly traversed sidewalk for up to a week, knowing that its tenants relied on “reasonably prompt" service and in spite of multiple snowstorms, could be deemed unreasonable under the circumstances.
*180 [i]t is common knowledge that in this [New England] climate ... a number of conditions might exist which with a very short time could cause the formation of ice . . . without fault of the owner and without reasonable opportunity on his part to remove it or warn against it or even to ascertain its presence,
*181 Citing to Anderson v. Fox Hill Village Homeowners Corp., 424 Mass. 365, 368 (1997), WHA argues that its alleged failure to timely remove the snow and ice cannot rise to the level of tort. WHA’s reliance on Fox Hill is misplaced. There, a woman sued a commercial lessee for negligence after she injured herself falling on ice in the lessee’s parking lot. Fox Hill, 424 Mass. at 366. The defendant/lessee had promised to remove snow and ice from the premises as a condition of its lease agreement with the lessor. Id. The plaintiff argued that even though she was a third party to the lease she was an intended beneficiary of the snow removal policy and, in the alternative, the defendant had, by virtue of the contractual obligation, assumed a greater duty of reasonable care than imposed by common law. Id The Supreme Judicial Court rejected both arguments, finding that the lessor, and not third parties, was the intended beneficiary of the lease’s snow removal provision, and declined to alter the natural accumulation liability standard. Id. at 368-69.
Fox Hill does not control in this case. In deciding for the lessee, Fox Hill, the Supreme Judicial Court reiterated that property owners and possessors do not incur a stricter duty under the natural accumulation doctrine merely by assuming a contractual obligation to remove snow and ice. Id The Court ruled that the plaintiff was not an intended third-party beneficiary under the lease and that any contractual duty created by the lease was owed to the lessor. Id. That holding is not controlling here. Here, Garand was a party to the lease and WHA’s duty to remove snow and ice clearly inured to her benefit. Defendant’s statement that “because a natural accumulation of ice and snow is not a defect under Massachusetts law, a defendant’s failure to remove it, even if he assumes the duty under contract to do so, does not create tort liability,” is a mistaken characterization of the law. (Defs Mem. Supp. Summ. J. 5.) Quite to the contrary, a defendant’s negligent failure to remove a natural accumulation of ice and snow, where he assumes the duty under a contract to do so, may create tort liability. Falden, 333 Mass. at 137; Carey, 327 Mass. at 189. Viewing the record in the light most favorable to Garand, whether WHA’s omission was negligent under the circumstances is a question for the juiy and not to be decided as a matter of law.
ORDER
The question whether WHA adequately and reasonably fulfilled its duties under the lease establishes a genuine issue of material fact concerning WHA’s liability for Garand’s injuries. Accordingly, the Court DENIES WHA’s Motion for Summary Judgment.

 I do not address at length Count Three of Garand’s Complaint, alleging breach of the implied warranty of habitability. The implied warranty of habitability applies only to significant, physical defects in the property itself. Doe v. New Bedford Hous. Auth., 417 Mass. 273, 282 (1994); Berman & Sons v. Jefferson, 379 Mass. 196, 201-02 (1979). While an unnatural accumulation may rise to the level of a substantial property defect, a natural accumulation is never considered a properly defect and is not a cognizable breach of the implied warranty of habitability. McAllister v. Boston Hous. Auth., 429 Mass. 300, 305-06 (1999). Accordingly, the court’s findings on the issues raised in Counts I and II render unnecessary analysis of the issue presented in Count III.

Of course, an owner or occupier cannot be held liable for failing to correct or warn of a dangerous condition that he did not know, or had no reason to know, afflicted his property. Sheehan v. Roche Bros. Supermarkets. 448 Mass. 780, 782-83 (2007).