JUDITH IDE, Plaintiff-Appellee, v. THE CITY OF EVANSTON *et al.*,
Defendants-Appellants.

First District (1st Division)   Nos. 1—92—3527, 1—92—3651 cons.

Opinion filed October 24, 1994.

Flynn, Murphy, Ryan & Seyring, of Chicago (Richard T. Ryan and Mark F. Smolens, of counsel), for appellants.

Leonard M. Ring & Associates, P.C., of Chicago (Leonard M. Ring, Gerald T. Donoghue, and Harry C. Lee, of counsel), for appellee.

JUSTICE O'CONNOR delivered the opinion of the court:

On January 1, 1986, Judith Ide slipped on an ice-covered walkway near her home in Evanston, Illinois. She suffered a broken wrist as a result and sued defendants the City of Evanston and Harvey W. Server. A jury found that Evanston (40%) and Server (60%) were negligent in failing to barricade or otherwise protect her from the icy condition and awarded Ide $277,408.75 in damages less 12% for comparative negligence, amounting to a total award of $244,119.70. Evanston has appealed.[1]

Judith Ide is a recreational jogger. Prior to her accident, she had been running regularly for many years. Ide and her sisters engaged in a regular running routine, which took Ide and her sister Sara

---

[1]Prior to oral argument, the plaintiff filed a motion to dismiss the appeal of Harvey W. Server for failure to file a brief. That motion is granted. *First Capitol Mortgage Corp. v. Talandis Construction Co.* (1976), 63 Ill. 2d 128, 345 N.E.2d 493.

from Ide's apartment at 700 Hinman Street in Evanston to sister Joe's apartment on the other side of Hinman Street in the 1000 block, a few blocks to the north. The three would run along Evanston's lakefront, travelling up to six miles a day, and eventually return to Joe's apartment. From there, Ide and Sara would retrace their steps, walking back to Ide's apartment, where they would part company.

On December 31, 1985, the weather was bitterly cold. The temperature was five degrees at 6 p.m. and 10 degrees as the new year came in. At approximately 10:30 p.m., New Year's Eve, Evanston police officer Jon Birkenheier investigated a water leakage at the building located at 811 Chicago Avenue, one block west of the spot on Hinman Street where Ide fell. Birkenheier notified his dispatcher about the condition and told the dispatcher to notify the owner of the building, Server, and Evanston's water and fire departments.

At 10:51 p.m., Benjamin Phillips, then a fire engine company captain with the Evanston fire department, arrived and discovered a break in the water main at 811 Chicago Avenue. He called his dispatcher, requesting that notice be given to the building owner, the Evanston water department and the Evanston streets and sanitation department. Phillips examined the perimeter of the building and found that water was seeping from the building out into a parking lot behind the building. At the time, slush was forming in the parking lot.

Between 10:30 or 11 p.m., Jay Henderson, a master mechanic with the Evanston water department, received an emergency call about the leak. He arrived at 811 Chicago Avenue about 30 minutes later. He could hear water running inside the building. By 12:15 a.m., he had shut the water off.

At 3 a.m., Captain James McIntyre of the Evanston fire department received a call that water was flowing from 811 Chicago Avenue into a rear ramp in the building at 800 Hinman Street. He went to the scene and discovered water had flowed from 811 Chicago Avenue, through the parking lot, around to the front entrance ramp of the 800 Hinman Street building and onto the sidewalk on Hinman Street. He saw that ice had formed on the entrance ramp to 800 Hinman Street.

At 3:30 a.m., Jay Henderson received a second emergency call and returned to the scene. Henderson saw that water was continuing to seep from the building. Henderson returned to the water department to obtain sand and barricades. He went back to 811 Chicago Avenue and built a three-inch-high sand dike, surrounded by barricades, which diverted the water east from the south edge of that building into the alley and north toward the city sewer located in the

ailey. Proceeding to the front of the 800 Hinman Street building, Henderson encountered that building's maintenance man, who informed Henderson that the entrance ramp was icy. Henderson did not salt, sand, or barricade the sidewalk and entrance ramp at that time, nor did he provide any equipment to the building maintenance engineer so that he could do so. Before leaving, Henderson determined that the leakage inside 811 Chicago Avenue had stopped and that water was no longer flowing through the 800 Hinman Street building.

On January 1, 1986, Judith Ide's sisters were out of town. Nonetheless, in keeping with her routine, Ide decided to go running. Commencing around 10 or 10:30 a.m., she followed the regular route, as if she were with her sisters. Upon finishing her run, Ide found herself at her sister Joe's apartment. She was walking home on the 800 block of Hinman Street and noted that the sidewalk was free of ice and snow. However, when she approached the stretch of walkway north of 800 Hinman Street, she noticed that "there was ice everywhere." She decided to avoid walking on the ice. Instead, she walked on the parkway in between the street and the sidewalk. This area was covered by more chunky ice and snow. Ide was aware that this area was usually not cleared of ice and snow in previous winters.

She traversed the parkway, starting from just north of the parking lot until the parkway met the entrance ramp of 800 Hinman Street. There she stopped because she saw ice on the driveway which went down to the base of the building. Ide decided that, rather than walking in the street, which was ice-free, she would attempt to cross the driveway to where it met the ice-free sidewalk on the other side. After taking two or three steps, she fell, cushioning her fall with her hands. These proceedings ensued.

The sole contention Evanston raises on appeal is that it owed no duty to Ide because the icy sidewalk was an open and obvious condition, appreciated by Ide, which, once avoided, she should have continued to avoid.

■ Ide argues that Evanston has waived this issue because the city failed to raise the issue at trial or in its post-trial motion. Ide acknowledges that Evanston did raise the issue at the hearing on the post-trial motion. At the time, Ide moved to strike the argument; however, the trial court denied Ide's motion and explicitly decided to hear the issue. The waiver rule is a limitation on parties, not on the courts. (*In re Marriage of Rodriguez* (1989), 131 Ill. 2d 273, 279, 545 N.E.2d 731.) Here, the trial court decided, for whatever reason, to overlook Evanston's prior failure to explicitly raise the duty issue in a written pleading. The trial court rejected, on the merits, Evanston's contention that it owed no duty. Therefore, we do not deem the issue

waived. *Cf. Mazurek v. Crossley Construction Co.* (1991), 220 Ill. App. 3d 416, 422, 581 N.E.2d 59.

■ Under section 3—102(a) of the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1985, ch. 85, par. 3—102(a)) (Tort Immunity Act), a local public entity owes a duty of ordinary care:

> "to maintain its property in a reasonably safe condition for the use in the exercise of ordinary care of people whom the entity intended and permitted to use the property in a manner in which and at such times as it was reasonably foreseeable that it would be used, and shall not be liable for injury unless it is proven that it has actual or constructive notice of the existence of such a condition that is not reasonably safe in sufficient time prior to an injury to have taken measures to remedy or protect against such condition."

Section 3—102(a) codifies the common law. *Santelli v. City of Chicago* (1991), 222 Ill. App. 3d 862, 867, 584 N.E.2d 456.

■ The long-standing rule that a governmental entity owes no duty to prevent or warn against injuries that occur on streets and sidewalks as the result of the natural accumulation of snow and ice (see *Graham v. City of Chicago* (1931), 346 Ill. 638, 641, 178 N.E.2d 911) has been retained and codified in section 3—105 of the Tort Immunity Act. (See Ill. Rev. Stat. 1985, ch. 85, par. 3—105.) When an accumulation of snow and ice is "unnatural," a municipality may be held liable for failing to remove the snow or ice. *Graham*, 346 Ill. at 641.

■ Evanston has conceded that the accumulation of ice on Hinman Street on January 1, 1986, was unnatural. However, it argues that it owed no duty to protect Ide from it under the open and obvious danger exception to the duty rule found in section 343A of the Restatement (Second) of Torts, which states:

> "A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." (Restatement (Second) of Torts § 343A (1965).)

Ide was not an invitee of Evanston on January 1, 1986. Rather, the users of streets and sidewalks in a city are licensees. (See *Smalling v. La Salle National Bank* (1982), 104 Ill. App. 3d 894, 433 N.E.2d 713, citing *Kremer v. Carr's Food Center, Inc.* (Alaska 1969), 462 P.2d 747.) Thus, by its terms, section 343A was not meant to apply to this case. Furthermore, we have found no case which applies the open and obvious doctrine to a fall on a municipal sidewalk. However, given that, under Illinois law landowners owe the same duty of care to li-

censee as to invitee, the principles in section 343A apply with equal force to the former. See *Ward v. K mart Corp.* (1990), 136 Ill. 2d 132, 151, 554 N.E.2d 223.

∎ Nonetheless, our supreme court has cautioned the courts of this State against mechanistically applying the open and obvious danger doctrine by "merely viewing [a] condition in the abstract, wholly apart from the circumstances in which it existed." (*Ward*, 136 Ill. 2d at 152.) We believe this to be a case in which the *Ward* caveat is particularly apt. Therefore, in determining the duty issue before us, we will look to traditional policy considerations, including the likelihood of injury, the magnitude of the burden of guarding against the injury, and the consequences of placing that burden upon the defendant. (*Ward*, 136 Ill. 2d at 151.) On the record before us, these considerations weigh in favor of the plaintiff.

∎ Evanston had knowledge that, as the result of an unnatural occurrence, the sidewalk upon which Ide fell was ice-covered and unpassable. Our courts have recognized that when a sidewalk is unpassable, pedestrians may reasonably be expected to traverse, as Ide did here, the adjacent parkway. (*Marshall v. City of Centralia* (1991), 143 Ill. 2d 1, 9-10, 570 N.E.2d 315.) Given this, we believe the simple act of barricading the sidewalk and parkway would have detoured Ide from the danger represented by the sidewalk in front of 800 Hinman Street. The magnitude of placing this burden on Evanston in this case is slight because municipal workers had been present at the site throughout the previous night. Placing a duty on Evanston under these circumstances does not unreasonably burden it or render it an insurer of pedestrians walking on its sidewalks. Here, an unnatural accumulation of ice of which Evanston had notice created a great danger to pedestrians. Surely, had Evanston been repaving the sidewalk, it would have barricaded it to keep pedestrians from stepping into cement, equally open and obvious. We require no more here.

Affirmed.

CAMPBELL, P.J., and BUCKLEY, J., concur.