Agnes, Peter W., J.
*293 INTRODUCTION
The plaintiff, Loren Tisdale, filed this action against Leominster Donuts, Inc. and Jay’s Landscaping, claiming that both parties were negligent in allowing a dangerous condition to exist on land owned by Leominster Donuts, Inc. in the form of an unnatural accumulation of ice and snow. As a result, the plaintiff slipped and fell as he exited the donut store. The matter is before the court on both Defendants’ motions for summary judgment.
BACKGROUND
The summary judgment record, read in the light most favorable to the nonmoving party, Loren Tisdale, is as follows: On January 27, 2000 at approximately 10:15 a.m., the Plaintiff, Loren Tisdale drove into the defendant, Leominster Donuts, Inc.’s parking lot and entered Leominster Donuts through the front door. Upon walking across the parking lot on the way into Leominster Donuts the plaintiff observed “rutted ice” in the drive-through lane of the parking lot. The plaintiff testified that the ruddy ice was approximately 2-3 inches thick. The plaintiff also testified that the ruddy ice appeared to have tire tracks in it. The defendants admit that they did not sand or salt the parking lot prior to the plaintiffs accident. Mr. Tisdale exited the premises at approximately 10:15 a.m. He slipped and fell in the rutted ice located in the drive-through lane of the defendant’s parking lot. The fall resulted in a bulging disc at C3-4, a compression fracture atT4, and fractures of the 9th and 10th ribs.
DISCUSSION
I.Summary Judgment Standard
A motion for summary judgment shall be granted where the record, including pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, shows that there are no genuine disputes of material fact and the moving parly is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Commissioner of Corr., 390 Mass. 419, 422 (1983); The moving party bears the burden of demonstrating the absence of a genuine issue as to any material fact and that it is entitled to a verdict as a matter of law. Mass.R.Civ.P. 56(c); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 711(1991); Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989); A material fact “is one that might affect the outcome of the suit under the applicable law.” Mulvihill v. The Top-Elite Co., 335 F.3d 15, 19 (1st Cir. 2003). Where the moving party does not bear the burden of proof at trial, it may establish the absence of a triable issue either by submitting affirmative evidence that negates an essential element of the opposing party’s case, or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of its case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis, 410 Mass. at 716.
If the moving party “establishes the absence of a triable issue," the nonmoving party cannot defeat the motion by resting on mere allegations or denials in its pleadings or bare assertions of disputed facts. Peder-son, 404 Mass. at 17. See LaLonde v. Eissner, 405 Mass. 207, 209 (1989). Rather, the nonmoving party “must respond and allege specific facts which would establish the existence of a genuine issue of material fact” and support its allegations with admissible evidence. Pederson, 404 Mass. at 17. See Mass.R.Civ.P. 56(c), (e); LeBlanc v. Great American Ins. Co., 6 F.3d 836, 842 (1st Cir. 1993). A genuine dispute means that “a reasonable fact finder could resolve the point in favor of the nonmoving party.” Mulvihill, 335 F.3d at 19. In making that determination, the Court must construe the facts in the record in the light most favorable to the nonmoving party and draw any reasonable inferences in its favor. Ng Bros. Constr., Inc. v. Cranney, 436 Mass. 638, 644 (2002); Harrison v. NetCentric Corp., 433 Mass. 465, 468 (2001). Even if a factual dispute exists, summary judgment is proper if the law is such that resolution of factual dispute will not change the result. Mass.R.Civ.R 56(e).
II.Responsibility of Owner to Patrons
The issue of whether the defendants owe a duty of care to the plaintiffs is a question of law to be decided by the Court. Yakubowicz v. Paramount Pictures, 404 Mass. 624, 629 (1984); Callahan v. Boston Edison Co., 24 Mass.App.Ct. 950, 953 (1987). Owners ofland have a duty of reasonable care to all visitors upon their land. However, owners are not insurers of the safety of visitors, and thus are not responsible for providing the maximum amount of safely to their visitors. O’Sullivan v. Shaw, 431 Mass. 201, 204 (2000). Rather, they owe a duty to maintain reasonably safe conditions and to warn visitors of any hidden dangers of which the landowner is or should be aware. Id.[1] This duty does not extend to dangers that are open and obvious, i.e. that persons of reasonable intelligence would be aware. Id. For this reason, owners of land do not owe to visitors a duty to remove or alter natural accumulations of ice and snow from their property. Sullivan v. Town of Brookline, 416 Mass. 825, 827 (1994). However, owners may have a duty to remove or protect against unnatural accumulations of ice and snow. Id. The plaintiff contends the open and obvious doctrine and unnatural accumulations are mutually exclusive, and that landowners are liable for any injuries suffered by a visitor as a result of unnatural accumulations of ice and snow. For reasons described below, the Court finds that if a dangerous condition on land is open and obvious, the owner does not have a duty to warn or protect against even when it consists of an unnatural accumulation of ice and snow.
III.Natural Versus Unnatural Accumulation
A
The plaintiff first claims that summary judgment cannot be granted because there is a material fact in *294 dispute regarding whether or not the accumulation of ice and snow was natural. The plaintiff contends that the management of Leominster Donuts was responsible for providing a reasonably safe environment for plaintiff and failed to do so. The plaintiff also claims that Jay’s Landscaping Inc. had a duty to adequately remove and dispose of the snow and that they did not do so.
The plaintiff claims that the accumulation of ice and snow was unnatural because it was partially plowed and because it was caused by or resulted from a down spout on the roof of the building. However, the plaintiff offers only an undated photo showing a down spout in the rear of the Leominster Donuts. The plaintiff admits that eleven inches of snow had fallen two days prior to the accident. The plaintiffs evidence that water runoff from the down spout caused an unnatural accumulation of ice is speculative. Without further proof regarding the down spout the evidence does not make it any more likely than not that the down spout contributed to or caused the accumulation of ice and snow, making it unnatural.
B
Even if evidence is offered that the down spout contributed to the accumulation of ice and snow, no evidence has been offered that the down spout was in disrepair. Unlike Baldassari v. Produce Terminal Realty Corp., 361 Mass. 738, 740 (1972), where there was evidence offered of disrepair in the roof contributing to the accumulation of ice and snow resulting in a slip and fall, there is no evidence of disrepair in the down spout in the record.
There is no authority in Massachusetts directly on point regarding the relationship between component parts of a building and the accumulation of ice and snow. However, this case is analogous to Kuba v. Health Care Financing Adm’r, 157 Wis.2d 262, 262 (1990), involving an accumulation of ice and snow resulting from an awning of a Burger King. Water running off of an awning resulted in an accumulation on an adjacent sidewalk which, in turn, resulted in an unnatural accumulation of ice and snow. The court stated that if a drain of some sort was used and in proper operation, the accumulation would not have been unnatural. Id. at 2. The down spout used at Leominster Donuts was similar to that referred to by the court in Kuba. Thus, the accumulation of ice, even if it resulted from the down spout, would still be considered natural unless the plaintiff offered evidence (which he did not do in this case) that the down spout was in disrepair.
C
Defendants Jay’s Landscaping and Leominster Donuts contend that the snow was plowed by Jay’s after the eleven inches of accumulation prior to the accident. Plaintiffs contend that this plowing left 2-3 inches of rutted ice remaining on the parking lot, causing the accumulation to be unnatural. However, shoveling of a walkway such that it is left in an icy condition does not change the character of the snow from natural accumulation to unnatural accumulation. Sullivan, 416 Mass. at 827. In that case, the shoveling was determined not to have created the ice therefore it was not an unnatural accumulation. Id. Similarly, there is no evidence that the snow removal conducted by Jay’s Landscaping itself created the icy condition in the Leominster Donut parking lot; therefore it did not create an unnatural accumulation.
Similarly, ruts in a sidewalk created by delivery trucks did not constitute an unnatural accumulation of ice and snow, when the delivery trucks were conducted for a business purpose. Bamberg v. Bryan’s Wet Wash Laundry, 301 Mass. 122, 123-24 (1938). The defendant in that case was not found negligent for failing to remove the ruts on the sidewalk because they were made during the ordinary course of business and did not constitute an unnatural accumulation. Id. at 124. The evidence indicates that the ruts in the Leominster Donuts parking lot were created by automobiles occupied by patrons traveling through the drive-through lane. The ruts were located on the drive-through lane. There is no reason to assume that these cars were not traveling in the ordinary course of business. Thus, Leominster Donuts had no duty to protect the plaintiff against such a condition.
Plaintiff, in his memorandum opposing summary judgment, relies on Delano v. Garretson-Ellis Lumber Co. This reliance, however, is unfounded. In Delano, the “muddy ice” was covered by a half inch of powdery snow. Delano, 361 Mass. at 501. Thus, to a passerby, the accumulation looked relatively safe, and the defect was hidden. In that case, there was also evidence that the plaintiff did not fall in a vehicular way; therefore the “muddy ice” was not reasonably justified. Id. at 503. In the case at bar, the plaintiff slipped and fell on the drive-through. There is no question in this case that the accumulation of snow and ice in the parking lot was unnatural. Eleven inches of snow fell two days prior to the accident and the snow was plowed by Jay’s Landscaping. Simply plowing snow does not create an unnatural accumulation, nor does the traffic of automobiles upon snow in the course of ordinary business create an unnatural accumulation. Barnett v. Lynn, 433 Mass. 662, 666 (2001); Reardon v. Parisi, 63 Mass.App.Ct. 39, 46 (2005); Goulart v. Canton Housing Authority, 57 Mass.App.Ct. 440, 443 (2003); Zanfanga v. SBK Associates, LLC, 22 Mass.L.Rptr. 395, 396 (Superior Court 2007); Morreale v. Town of Wayland, Worcester Super.Ct. No. 04-00129, 684 (2006) [21 Mass. L. Rptr. 684).
IV. The Relationship Between the Open and Obvious Danger Doctrine and the Distinction Between Natural and Unnatural Accumulations of Ice and Snow
There is a dearth of authority on the relationship between the open and obvious danger doctrine and *295 unnatural versus natural accumulation of snow and ice. It is axiomatic that a landowner does not owe a duty of care to visitors to safeguard them from open and obvious dangers. O’Sullivan, 431 Mass. at 205. Open and obvious dangers are those which would be recognized by persons of ordinary intelligence. Id. at 205. Plaintiff claims that the open and obvious danger doctrine does not apply to precipitation accumulations. There is no authority supporting plaintiffs stance. The only authority is to the contrary. In Sweet v. Cieslak, 23 Mass.App.Ct. 908 (1986), the Appeals Court applied the open and obvious danger doctrine to a set of facts involving a slip and fall on ice. A patron at a coin-operated car wash sued for negligence when he slipped and fell on ice that accumulated during the early morning hours in the winter months. The court found the danger to be open and obvious so that the defendant had no duty to warn or protect the plaintiff from that danger. This is consistent with case law from other jurisdictions which have considered the point. Prexta v. Akron, Inc., 2006 WL 3825186 (OhioApp.Ct. 2006); Bailey v. River Properties, 2006 WL 2097494 (OhioApp.Ct.2006); Bevins v. Arledge, 2003 WL 25257937 (OhioApp.Ct. 2003).
When a danger is open and obvious so that a person of reasonable intelligence recognizes that such danger exists, that person has the responsibility to determine whether or not the benefit of endeavoring in such dangerous activity outweighs the cost. This reflects the duty to act reasonably that the law imposes on all persons, and is consistent with the public policy of the Commonwealth that legal duties arise out of social values and customs and appropriate social policy. O’Sullivan, 431 Mass. at 203. In the case at bar, the danger presented by ice on the parking lot was clear and present when the plaintiff arrived. He took caution in crossing the parking lot when entering Leominster Donuts. He testified that he observed icy conditions in the parking lot and walked carefully because he appreciated the danger of those icy conditions. On his return trip from the building, he slipped and fell on the same icy parking lot he had traversed.
In Illinois, the court also applied the open and obvious standard to an unnatural accumulation of ice and snow. The court considered whether or not the defendant owed a duty to the plaintiff, observing the likelihood of injury, the magnitude of burden of guarding against injury, and the consequences of placing the burden on the defendant. Ide v. City of Evanston, 267 Ill.App.3d 881, 885 (1994). In that case, the defendant conceded that the accumulation was unnatural, but contended that the danger was open and obvious; therefore there was no duty to protect against said danger. Id. at 882.
The defendants in this case appear to have guarded against the danger by removing the snow. The defendants cannot legitimately be asked to do more than plow the parking lot. Winter weather leads to snow-covered grounds, which cannot always be made ice-free. The magnitude of the burden of protecting against injury would be unreasonably high if it meant providing a completely safe and clear parking lot relatively shortly after a winter storm. The open and obvious nature of an icy parking lot during the daylight hours of New England winters should be evident to all travelers and calls upon them to take extra care in crossing such areas.
Plaintiff also claims that the open and obvious doctrine is a question of comparative negligence to be decided by the jury. This is unquestionably true in some jurisdictions, but does not appear so in Massachusetts. In fact, it was argued to the Supreme Judicial Court that the open and obvious danger rule was implicitly abolished by the comparative negligence statute. O’Sullivan, 431 Mass. at 207. The Supreme Judicial Court rejected this argument and held that our courts should continue to apply the open and obvious danger rule in cases decided after the abolition of the assumption of risk defense. Id. at 207.
CONCLUSION
This case is controlled by Sweet v. Cieslak, 23 Mass.App.Ct. 908 (1984). For the foregoing reasons, it is hereby ORDERED that the defendants’ motions for summary judgment be ALLOWED.

While not presented by the facts in this case, landowners also owe a duty to warn visitors of dangers that they knew or should be aware pose greater risks of injury than would appear to a person of reasonable care in the position of a visitor. This is simply an application of the doctrine of liability for hidden defects. Delano v. Garretson-Ellis Lumber Co., 361 Mass. 500, 501 (1972).